Smith v. Floyd.

———— • • • ————

## SMITH vs. FLOYD.

Where a juror is challenged for favor, the triors must find that he stands impartial and indifferent, or they should reject him.

It is the province of the court to say what evidence is admissible, on the question of indifference, but its strength and influence in establishing the allegation of favor or bias are for the triors alone to determine.

In an action of trespass *quare clausum fregit,* one of the defenses set up in the answer was, the existence of a custom for all the inhabitants of the town of B., &c. to depasture the uninclosed wood lands of individual proprietors within the town, &c.   Three of the jurors were challenged for favor, on the ground that they had formed an opinion as to this custom.   On the trial of the chal-

Smith *v.* Floyd.

lenge, one of the jurors challenged was sworn as a witness, and testified that he had formed an opinion against the custom. *Held* that the triors had two questions to determine: 1. Was the alleged ground of challenge true? 2. If true, was its effect upon the mind of the juror such as to produce bias or favor? That the inference and effect of the opinion, upon the mind of the juror, was not a question of law, upon which the defendant was entitled to have the instruction of the court, but it was to be referred to the judgment of the triors themselves.

A party will not be allowed to take an objection upon a motion for a new trial, which, if made at the circuit, might have been obviated.

Therefore, after a cause has been tried upon the complaint and answer, without objection, the defendant will not be allowed to rely upon the absence of a reply, and to insist that, no reply having been put in, the plaintiff is concluded by the state of the pleadings, from controverting the facts set up as a defense, in the answer.

Where, upon a motion for a new trial, a reply is deemed essential to make the verdict conform to the state of the pleadings upon the record, leave will be given to the plaintiff to file one, *nunc pro tunc.*

There can be no intercommonage, or common because of vicinage, unless there are contiguous townships, the inhabitants of which seeking to excuse a trespass for that cause, have common rights of pasturage appendant, appurtenant or in gross, in the towns where they reside.

The proof to establish a customary right cannot be less than that required to establish a prescriptive right. The entry or use must have been adverse or hostile to the true owner, in its commencement. It must have been used and enjoyed under a claim of right, and have continued uninterrupted for a length of time sufficient to bar an entry.

The fact that cattle are suffered, without objection, to run at large over the uninclosed wood lands of a new country, affords no ground from which to imply a grant.

A custom that all the inhabitants of a particular town, for the time being, have the right to depasture the uninclosed wood lands of individual proprietors within the town, is not a mere easement, like a right of way, or a right to flow water. It is a right to take a *profit;* and for such a right the commoner must prescribe in respect to some estate, and not in respect to mere inhabitancy. The custom is therefore void.

APPEAL by the defendant, from an order made at a special term, refusing a new trial in an action of trespass *quare clausum fregit;* verdict for the plaintiff.

*Henry Nicol,* for the plaintiff.

*Samuel Beardsley,* for the defendant.

*By the Court,* BROWN, J. This is an appeal from a decision made at a special term, denying a motion for a new trial, upon a case made by the defendant. Upon the trial at the Suffolk circuit, three of the jurors were challenged for favor. The case of each juror was separately submitted to triors, who, after hearing the evidence, found them impartial and indifferent. No evidence was given but such as was produced by the defendant, who made the challenges, and no exception was taken to the evidence. The true rule is stated by Mr. Justice Beardsley, in *Freeman* v. *The People,* (4 *Denio,* 35,) in these words : "The triors must find that the juror stands impartial and indifferent, or they should reject him. It is the province of the court to say what evidence is admissible on the question of indifference, but its strength and influence in establishing the allegation of favor or bias are for the triors alone to determine. They are the final judges upon the matters submitted to them, and from their decision, when properly instructed, there is no appeal." The plaintiff's action was trespass *quare clausum fregit,* and one of the defenses set up in the answer was the existence of a custom for all the inhabitants of the town of Brookhaven and St. George's manor, for the time being, to depasture the uninclosed wood lands of individual proprietors within the town or manor. The challenge was made upon the ground that the jurors had formed an opinion as to this custom, but whether as to the fact of its existence, or as to its legal effect as a defense to the action, does not appear from the case. Upon the trial of the challenge of James Darling, he was sworn as a witness, and testified that he had formed an opinion against the custom. The defendant's counsel requested the justice to charge the triors that the testimony of Darling showed he was not indifferent. The justice refused, and the defendant excepted. It must be borne in mind that this was a challenge for favor, and the triors had two questions to determine. First. Was the alleged ground of challenge true in fact ? Second. If true, was its effect upon the mind of the juror such as to produce bias or favor ? The defendant's exception seems to assume that whenever it appeared that the juror had an opinion unfavorable to the custom set up in the

Smith *v.* Floyd.

answer, then he was no longer indifferent between the parties. This is not so. The material question of the influence and effect of such an opinion upon the mind of the juror still remained to be disposed of. That was not a question of law upon which the defendant was entitled to have the instruction of the court, but it was to be referred to the intelligence and good sense of the triors themselves. I see no ground, therefore, for interference with the verdict, on account of any thing which occurred upon the trial and disposition of the challenges to the jurors.

The answer of the defendant also sets up in justification that the plaintiff's close, where the trespasses were committed, was wood land, lying contiguous and adjoining to a close of the defendant, owned by Nicol Floyd, in fee, and of which the defendant was tenant; and that the defendant's cattle and sheep, being within his close, escaped into the plaintiff's close through defect of the fences, which the plaintiff was bound to maintain; which are the same trespasses, &c. No reply was put in to this answer, and the defendant now insists, in his sixth point, that the facts set up in the answer not being denied, must be taken to be true; and it thus appearing that the defendant's cattle escaped from his own enclosure and entered upon the lands of the plaintiff through defect of division fences which the plaintiff was bound to maintain, that therefore the defendant was entitled to a verdict. The truth of the facts alleged as a justification in the answer is now made a point in favor of the defendant for the first time in the progress of the action. Neither at the trial at the circuit, nor on the hearing at the special term, was the ground taken that the want of a reply relieved the defendant from the necessity of proving all the facts alleged as a defense in his answer. The case shows that he opened and explained his defense to the jury, and examined numerous witnesses at length upon each of the several grounds of defense set up in the answer. Had he insisted, upon the trial, as he now insists, that the plaintiff was concluded by the state of the pleadings, and was not at liberty to controvert the facts set up as a defense to the action, he would have had a verdict in his favor, or the point would have been ruled against him, and he would have

had a just ground of appeal, upon his exception; or, what is still more likely, leave would have been given to the plaintiff to withdraw a juror and file a reply, upon such terms as the court might have thought proper to impose. Thus equal and ample justice would have been done to both parties. It does not appear from the record, but it was said upon the argument, that the plaintiff's action was first commenced in a justice's court and discontinued upon the usual answer affecting the title. If this be true, then the uncertainty of the rule of practice in regard to the necessity of a reply, furnishes a reason why the defendant did not insist, upon the trial, that the plaintiff was concluded by the answer. In *McNamara* v. *Biteley*, (4 *How. Pr. R.* 44,) Mr. Justice Willard decided that where title is set up, in a justice's court, by answer, under the code of 1849, and a new action is commenced in this court for the same cause of action, to which the same answer is interposed, a reply to the answer is not required, to put in issue the facts set up in the answer. And the reply put in to such an answer was stricken out on motion. In *Jewett and wife* v. *Jewett*, (6 *How. Pr. R.* 185,) decided in Nov. 1850, at the general term for the 5th district, the case of *McNamara* v. *Biteley* was overruled, and it was held that where a justice's court is ousted of its jurisdiction, upon a plea of title, and a new action is prosecuted in this court for the same cause, the new action must be governed by the same rules of pleading and practice as other actions of the same kind, commenced in this court. This case is now universally regarded as authority. The present action was tried in September, 1850, and it is not assuming too much to say that both sides, in preparing the pleadings and conducting the trial, acted upon the belief that *McNamara* v. *Biteley* contained the true rule, and that no reply was required, to put in issue the facts set up in the answer. If the objection which the defendant now makes to the verdict, arising from the state of the pleadings, had been made at the trial, it would doubtless have been obviated in the manner already indicated. The power of the court to allow an amendment in any other stage of the proceedings, or an answer or reply to be made upon such terms as are reasonable and just, is

Smith *v.* Floyd.

given by chapter six of the code. It is too late therefore, now, for the defendant to rely upon the absence of a reply; for the principle is well settled that a party will not be allowed to take an objection, upon a motion for a new trial, which if made at the circuit might have been obviated. (*Lawrence* v. *Barker*, 5 *Wend.* 301. *Doane* v. *Eddy*, 16 *Id.* 523. *Ford* v. *Monroe*, 20 *Id.* 210.) Besides, if a reply be deemed essential to make the verdict conform to the state of the pleadings upon the record, the plaintiff should have leave to file one *nunc pro tunc*.

The action is trespass *quare clausum fregit*, by the defendant's cattle and sheep. The entry is not denied. In addition to the defense already mentioned, the defendant set up a defense of common of vicinage—custom of the town of Brookhaven—custom of St. George's manor—that the owners of uninclosed wood lands must fence against cattle and sheep, feeding in the open wastes, which means the uninclosed lands and property of individual proprietors. Right of common is an incorporeal hereditament, "being a profit which one man hath in the land of another, as, to feed his beasts, take fish, dig turf, cut wood, or the like. And common, because of vicinage or neighborhood, is where the inhabitants of two townships which lie contiguous to each other, have usually intercommoned with one another; the beasts of one straying mutually into the other's fields without any molestation from either. The right is said to be permissive, and either town may inclose and bar out the other, though they have intercommoned time out of mind. Neither hath any person of one town a right to put his beasts originally into the other's common, but if they escape and stray thither, of themselves, the law winks at the trespass." (2 *Black. Com.* 33, 34.) Common appendant, is a right belonging to the owners or occupants of arable lands. Common appurtenant, is annexed to lands in other manors, and common in gross, or at large, is neither appurtenant nor appendant, but is annexed to the person, and is granted by deed or claimed by prescriptive right. There can be no intercommonage, or common because of vicinage, unless there are contiguous townships, the inhabitants of which, seeking to excuse a trespass for that cause, have com-

mon rights of pasturage appendant, appurtenant or in gross, in the towns where they reside. There is no evidence of the existence of such rights in the present case, and I am not able to perceive how the defendant can avail himself of this principle of the old law. Before he can justify or excuse the trespass for defect of the plaintiff's fences, he must show that his cattle and sheep were rightfully in the adjoining close. And this depends upon the existence and legal force of the customary right for all the inhabitants of the town or manor to depasture the uninclosed lands of individual proprietors. The jury have negatived the existence of any such custom, and I concur with them in opinion. The proof to establish a customary right cannot be less than that required to establish a prescriptive right. The entry or use must have been adverse or hostile to the true owner, in its commencement. It must have been used and enjoyed under a claim of right, and continued uninterrupted for a length of time sufficient to bar an entry. Title by adverse possession or prescription, proceeds from actual, open and notorious occupation or use and claim; and is founded upon the principle that a man will naturally enjoy that which is his own, and will not suffer it to be held and enjoyed by another, under a claim of right, and in defiance of the title of the true owner, for a period so long as to create the presumption of a grant. The fact that cattle are suffered without objection to run at large over the uninclosed wood lands of a new country, affords no ground from which to imply a grant; because such use is not adverse, and is not accompanied by any claim, and because such a user is oftentimes unknown to the true owner, and takes nothing away which he would naturally appropriate to his own benefit. He is deprived of nothing which is to him of any real value; he is not interrupted in the enjoyment of his property, and there is no reason why he should assert his title. He does not, therefore, acquiesce in the claim and dominion of another, or in the appropriation of his property to the use of another. In passing, therefore, upon the existence of the custom set up in the defendant's answer, the jury found the absence of one or

Smith *v.* Floyd.

more of the material elements which constitute a customary or prescriptive right.

The defense, moreover, is embarrassed by the presence of a legal obstacle, which cannot be overcome. As I understand the custom upon which the defendant relies, it is, that all the inhabitants of the town of Brookhaven and St. George's manor, for the time being, have the right to depasture the uninclosed wood lands of individual proprietors within the town or manor. This is not a mere easement, like a right of way, or a right to flow water. It is a right to take a profit, and implies a qualified right of possession. In *Grimstead* v. *Marlowe*, (4 *T. R.* 717,) Lord Kenyon said, "The right which is claimed is to take a profit in *alieno solo;* but that, according to *Gatewood's case*, and the case of *Hardy* v. *Hollyday*, cannot be claimed by custom. There may be a custom for an easement, as a right of way in *alieno solo*, but for a profit *a prendre*, the party must prescribe in a *que estate.*" The principles asserted in *Gatewood's case*, (6 *Rep.* 60,) which are recognized and quoted with approbation in *Pearsall* v. *Post*, (20 *Wend.* 111,) affirmed in the court of errors, (22 *Wend.* 425,) are utterly irreconcileable with the custom set up by the defendant. Thus a customary right of common, similar in all respects, was held bad, because, 1st. " It would be transitory and uncertain, and would follow the person for no certain time or estate, but during habitancy only. 2d. It was against the nature and quality of a common, for every common may be suspended or extinguished; but such a common will be so incident to the person that no one can extinguish it ; for as soon as he releases and removes, the new inhabitant will have it. 3d. Because a commoner must prescribe in respect to some estate, and not in respect to mere inhabitancy. 4th. Because a custom that an inhabitant or resident shall grant or take a profit, is merely void." This authority must be regarded as decisive of the question upon the merits of the defense. The verdict is in conformity with the evidence and the law of the case, and the motion for a new trial must be denied.

[KINGS GENERAL TERM October 3, 1854. *Dean, Brown* and *Rockwell*, Justices.]