MARTIN ALLEN, plaintiff in error, *vs.* THE PEOPLE, defendants in error.

In the impanneling of the jury, in a criminal case, one of the jurors was asked " if he had formed an opinion as to the general character of the prisoner ?" He replied that he had; that " his general character was bad;" and that " he (the juror) was biased." *Held* that these admissions rendered the juror incompetent. INGRAHAM, P. J., dissented.

Whatever objection there may have been, under the English system, to two grand juries sitting in the same county at the same time, the Code has relieved the difficulty. The 20th section directs that the courts of oyer and terminer shall be held twice annually, in every county, and as many more terms as the judges shall appoint. The 23d section provides for extra courts to be appointed by the governor, and the 24th section provides for the adjournment of any court to a future day. The holding of one branch of the court does not prevent the holding of the regular courts as directed by the statute. *Per* INGRAHAM, P. J.

ERROR to the New York general sessions. The plaintiff in error was indicted in the court of oyer and terminer, in the county of New York, on the 9th of November, 1869, for grand larceny, in stealing money from a house. The indictment was afterwards ordered to be sent to the court of general sessions for trial. On the trial there, Thomas F. McDowell, a juror, being challenged for favor, was asked if he had formed any opinion as to the prisoner's general character. He replied that he had. Q. "What is the opinion ?" A. "Well, as to his character, I have heard nothing; I am biased." Q. "What is the opinion you have formed as to his general character ?" A. "My general opinion is that it is bad." The prisoner's counsel requested the court to charge the triors, as matter of law, that the juror was incompetent. This was refused, and the question was submitted to the triors, who found him to be competent.

Before the jury were sworn in chief, the prisoner's counsel interposed a special plea, viz: That the grand jury by whom the indictment was found on the 9th of November, 1869, of which grand jury Charles H. Haswell

Allen *v.* The People.

was the foreman—a grand jury held in the court of oyer and terminer, presided over by Mr. Justice INGRAHAM, and convened on the 1st Monday in October, 1869—was an illegally constituted grand jury and tribunal, as at the time the grand jury preferred and found this bill of indictment, a grand jury previously duly impanneled according to the law and the statute in such case made and provided, was then in session at the court of oyer and terminer, then being held before his honor ALBERT CARDOZO, one of the justices of the Supreme Court; and this the defendant was ready to verify.

The court overruled the plea, upon the ground that such plea should have been interposed before pleading. to the indictment; and that having pleaded not guilty, without raising the objection, the prisoner had waived the right to urge it afterwards.

The jury having found the prisoner guilty, his counsel moved, in arrest of judgment, that the indictment on which the prisoner had been tried and convicted was an invalid one; and one illegally found and presented, by a grand jury illegally held and unlawfully constituted and impanneled, and which was presided over by Justice INGRAHAM; there having been, at the time such grand jury was impanneled, a lawfully and legally impanneled grand jury of an oyer and terminer then actually in session, over which the honorable ALBERT CARDOZO presided, at a lawfully constituted court of oyer and terminer, in and for the city and county of New York; it being expressly contrary to law that two grand juries should be in session in the same county, at the same time. And counsel also moved, on the same grounds as set forth in the special plea offered to be interposed by prisoner's counsel before the jury were sworn; but the court denied the motion, upon the ground that there was no such question properly before the court; and the prisoner's counsel excepted.

*Wm. F. Howe,* for the plaintiff in error.

I. The court of general sessions had no jurisdiction of the case, nor of the prisoner, for purposes of trial. Because the indictment upon which he was arraigned had been presented by a body of men acting as the grand jury of the county for the court of oyer and terminer, but which was not the grand jury of the county in that court, and had no lawful authority to act as such. There was a properly authorized, appointed, organized and created grand jury then and there in existence and in session, and there could not be two grand juries in and for the said court at one and the same time. Under the old English law there could be two grand juries in the same county, in two courts of different jurisdictions, in the same county. (2 *Hale's P. C.*) There never was a time, even at the common law, when there could be two courts at the same time, each with a grand jury, in the same county, where the courts had identically the same jurisdiction. The case seems never to have been suggested in the books, until, owing to the peculiar composition of the court of sessions, viz., that it should be composed of two or more justices of the county, one of whom should be of the quorum, the question was proposed as one which might occur. It was admitted that under the law any two justices of the county, one of them being of the quorum, could hold courts of sessions at any place in the county appointed by them, and could issue precepts, &c. This question was raised by Mr. Justice Lambard, " That if two or more justices appoint a sessions to be holden in one town, and so many more appoint a sessions in another town, the same day, are the presentments made in both good?" And it was concluded that they were both bad and void, for being both equal in authority, one might present a matter one way, and the other might present the same matter in a manner directly the reverse of it, and which should prevail? And that the justices by whose forwardness such

division happens, or on whom such miscarriage happens, are punishable by information and fine, or putting out of commission, as the case shall require. (*Dalt. ch.* 185. *Burns, tit. Sessions.*) Thus it appears that if there be two courts of different powers, or having a different limit to their jurisdiction, they may each issue their precept for a jury to inquire, &c.; but that in the same court, or in branches of the same court, but one jury can be sworn at once, or at one term ; though it is held that after the discharge of a grand jury, another one may be sworn in the same court. Lambard says (*lib.* 4, *ch.* 5) of grand juries: An indictment is an accusation at suit of the king by the oaths of twelve men of the same county wherein the offense was committed, returned to inquire of all offenses in general in the county, which are determinable by the court into which they are returned. An indictment, says an ancient authority, is a bill or declaration of complaint drawn up in form of law, exhibited for some offense criminal or penal, preferred to a grand jury; upon whose oaths it is found to be true before a judge, or others having power to punish or certify the offense. (*Terms de Ley*, 293.) Courts of oyer and terminer were courts of general jurisdiction; courts of sessions of limited jurisdiction; each could issue precepts to the sheriff to return a grand jury to inquire concerning offenses within their respective jurisdictions. The oyer and terminer could not proceed upon indictments not taken before themselves, except by special commission, for they were to inquire, hear and determine; and even justices, having the more general commission of oyer and terminer and general jail delivery, could not proceed upon indictments presented to courts of sessions. (*Wood's Inst.* 478. 2 *Hawk.* 24.) In this State, our courts of oyer and terminer take the place of, and exercise the powers confided in England to general commissions of oyer and terminer and general jail delivery. The only difference is, that here certain periods and

persons are appointed for the holding of them; there, a commission is issued for each assizes. In England all courts of oyer and terminer are created by the king's commission; here, all courts of oyer and terminer are likewise created by the "king," (the people,) who has said (by law) that instead of issuing a commission for each court of oyer and terminer in each county, there shall be at least two in each county in each year; but the people have reserved the right to create other courts of oyer and terminer by commission. (See *Fitzherbert's Nat. Brev.* 110; *Jacobs' Law Dic. tit.* "*O. and T.*" and "*Gaol Delivery;*" *Tomlins' Law Dic. same titles;* 4 *Black. Com.* 269; *Miller's case,* 9 *Cowen,* 730; *Laws of* 1823, *p.* 211, § 9, *where certain judges were authorized by virtue of their office to hold the O. and T.* "*without any other commission;*" 2 *R. S.* 378, § 13, *et seq.; Laws of* 1847, *ch.* 280; 1 *R. L.* 1813, 355, *et seq.;* 1 *K. & R.* 174; *Laws of* 1683; *Orders of* 1699 *and* 1704; *Brad. Col. Laws, ed. of* 1710, *appendix;* 20 *N. Y. Rep.* 544.) The king of England could never send two contemporaneous general commissions of oyer and terminer to the same county; though, while a court was sitting under such commission, a special commission might be sent down, with jurisdiction only in such cases as were named in the commission. (See *Wood's Inst., Burns Inst., Jacobs' Law Dic. tit. O. and T.*) So in this State the governor may send down a special commission; but not two general commissions at once. But the commission under which Judge CARDOZO opened a court of oyer and terminer, on the — day of ——, 1869, was not a special commission, giving only special and limited jurisdiction, but was a general commission, conferring general powers, and the full jurisdiction of any court of oyer and terminer, which (the king) the people had appointed by statute in lieu of by a commission. (See *authorities above, and* 20 *N. Y. Rep.* 544; *Governor's Proclamation.*) This court of oyer and terminer, by virtue of its general powers, con-

Allen *v.* The People.

ferred as above (which were of equal force to any which were conferred upon any court of oyer and terminer by statute) on the — day of ——, 1869, impanneled a grand jury "to inquire of all crimes and misdemeanors committed or triable in the said county," and the said court proceeded to "hear, determine and punish, according to law, all crimes and misdemeanors in the said city and county done and committed," which were presented by indictment by the grand jury, so lawfully impanneled under the general commission. While this court was in session, while the grand jury were still impanneled and engaged in "inquiring" into all crimes, &c., another general commission was sent down to the same county, or, what is the same thing, Mr. Justice INGRAHAM, by virtue of the statute, "and without other commission," (*see Laws of* 1823, *above cited,*) opened a court of oyer and terminer, and impanneled a grand jury, which was also sworn to "inquire into all crimes and misdemeanors committed or triable in said county," and by whom the plaintiff in error was presented. It thus appears that two courts of oyer and terminer, existing by virtue of the same creative power, (though it was manifested by different signs,) and having in every respect the same jurisdiction, and over the same territory, were sitting at the same time, in the same county, each with a grand jury impanneled and sworn to inquire as to the same matters. This state of things was never contemplated by our laws. 1. It is contrary to the usage and laws of England, as above recited. (*See Burns' Inst.*; *Jacobs' Law Dic.*; *Tomlins' Law Dic.*; *Wood's Inst.*; *Dalton*; *Lambard*; *Hawk. P. C.*; *Hale's Hist. P. C.*; *East, P. C.*; *Bacon's Ab. tit.* "*Juries,*" "*Sessions,*" "*Gaol Delivery*;" *Oyer and Terminer* "*Indictments.*") 2. The constitution of 1821, article 4, section 13, provides for one clerk of the court of oyer and terminer in each county. Could there be two "courts of oyer and terminer" at once, the definite article *the* would not have been used.

(*See also Laws of* 1847, *ch.* 307.)  3. Suppose that these two courts had commenced their sittings on the same day, at which of the two is the sheriff to attend and produce his prisoners?  To which court are "all coroners, magistrates, &c., to produce inquisitions, recognizances, &c., "that the court may proceed thereon?"  (2 *R. S.* 379, § 23.)  To which court shall indictments found in the sessions be sent for trial?  (2 *R. S.* 378, § 15.)  And which shall claim the presence of the district-attorney of the county to prosecute?  Which court should appoint to fill a vacancy in the office of district-attorney, should there be one?  (*See* 2 *R. S.* 380, § 30; *Laws of* 1847, *ch.* 470, § 33.)  4. An examination of the various statutes respecting courts of oyer and terminer in this State renders it certain (if it was ever doubtful) that there can exist at the same time, in one county, but one court of oyer and terminer.  5. The legislature, at its last session, passed an act authorizing a grand jury to be sworn in the court of general sessions of the peace in and for the city and county of New York, notwithstanding there was one in existence in the court of oyer and terminer.  Before this act, it was unlawful to have two grand juries at once in one county at all, and this act does not authorize two, at once, in the same court, viz., the court of oyer and terminer.  For these reasons, it sufficiently appears that the first mentioned court and the grand jury by it impanneled, being the court of oyer and terminer for the county of New York, had jurisdiction of the offense, and that the second grand jury impanneled by Justice INGRAHAM's court were illegally impanneled, and had no power to present the plaintiff in error, while the other was not yet discharged.  6. The court below erred in refusing to charge the triors, that the juror, McDowell, was incompetent.  The exception to the ruling is well taken.  McDowell was sworn upon the jury, was challenged to the favor, and testified that he had formed an opinion that the character of the plaintiff in error was

bad. In respect to whether the juror was "biased," he said he was. His (the juror's) language was, "I am biased." There was no other evidence before the triors than that of the juror, as to whether he was biased or indifferent. It appears positively and unequivocally, upon the undisputed evidence, that the juror was "biased;" in other words, not indifferent, and the court should have charged that the juror was not competent. If, on a trial of an issue of fact before a jury, the evidence be all one way, there being no conflict of testimony—if one side of the issue is thus proved, there being no evidence to the contrary—it is the duty of the court, on request of counsel, to so charge, and a refusal to do so is error. The same is equally true in respect to an issue before triors. In the language of the Supreme Court, per Beardsley, J., in *The People* v. *Bodine*, (1 *Denio*, 305:) "The question for the triors is, whether the juror is, as he assuredly should be, altogether indifferent, (that is, altogether unbiased;) and if they find he is not, it is their duty to reject him." In the case at bar the juror, McDowell, testified that he was not indifferent; he was biased; and there was no evidence to the contrary. The juror did not testify a word even tending to show that he was indifferent or unbiased. He did not testify that he thought he could counteract the effect of the "bias" on his mind. The juror testified to only two things, namely, that he believed that Allen's character was bad, and he (the juror) was "biased;" nothing else appeared from the juror's evidence. This state of mind is precisely that which the law adjudges to be a disqualification, which renders the juror incompetent. The judge below charged the triors that the question for them was, whether the juror was "sufficiently unbiased to act as a fair and impartial juror in the trial of this case." This was excepted to. It was error for the court below to charge the triors, that it was for them to say, on the evidence, whether they could find that the juror was "suffi-

ciently unbiased," when there was no evidence tending in the remotest degree to prove that he was "unbiased." The court below proceeded on the idea that the only question for the triors was, whether the juror was indifferent or unbiased with respect to the issue about to be tried, on the plea of not guilty to the indictment for larceny. In the case of *Freeman* v. *The People*, (4 *Denio*, 9,) the Supreme Court held that a juror to be competent, must not only be indifferent as to the issue he is to determine, but impartial between the parties; and where triors of a challenge to the favor were sworn to find whether the juror was indifferent "upon the issue joined," this was held to be error, for the reason that that was not the issue the triors were to pass upon, but the issue for them was, whether the juror was indifferent, unbiased. In delivering the opinion of the court, Beardsley, J., says: "It is not enough that they (the triors) are indifferent upon the particular issue to be tried, but actual and thorough impartiality in regard to the parties is required; for no one who labors under prejudice, malice, or ill will towards another, can be in a fit frame of mind to act impartially, when his rights are in question." If "prejudice," as above stated, be sufficient to disqualify a juror, certainly where the testimony shows the juror believes that the prisoner's character is bad, and he (the juror) is "biased" and not indifferent, and there is no evidence to the contrary, the juror is unquestionably incompetent, and the refusal to so charge triors is error.

II. Inasmuch as the ruling in regard to the juror, McDowell, was not only in direct violation of the doctrine adjudged to be the law in *Bodine* v. *The People*, and *Freeman* v. *The People*, cited above, but contrary to the whole current of authority on the subject of challenges to the favor, the judgment of the court below should be reversed, and a new trial ordered.

*S. B. Garvin*, (dist. att'y,) for the people.

I. The objections and exceptions taken to the rulings made by the court upon the challenges to the juror, McDowell, were properly overruled. It is clearly settled, upon authority, that the decision of the triors is final, upon the question of fact. (*The People* v. *Bodine*, 1 *Denio*, 308, 309.) Such decision is final, and cannot be reviewed. (22 *N. Y. Rep.* 151.) The only question presented on this part of the case arises upon the charge to the triors. The prisoner asked the court to charge the triors, as a matter of law, that the juror having stated he had formed a bad opinion of the prisoner's general character, he is incompetent as a juror. Which was declined, and exception taken. The charge was right. As to whether he is sufficiently unbiased to act as a fair and impartial juror in the trial of this case, the facts disclosed are, 1st. He had formed no opinion as to prisoner's guilt or innocence. 2d. He had not heard anything as to prisoner's character. 3d. Had simply formed an opinion as to his general character, which opinion was that his general character was bad. 4th. The trial he had heard left no bias on his mind against him. 5th. "I am biased." These are all the facts which appear upon the challenges, so far as is shown by the bill of exceptions. The general rule is that the juror should be indifferent between the parties. If either party think he is not indifferent, the juror may be challenged for principal cause, or to the favor, according to the degree of probability of being biased; or both challenges may be interposed. The causes of favor (says Lord Coke) are infinite, and where that which is alleged does not, in judgment of law, amount to a disqualifying bias, (1 *Denio*, 305,) it must be left to the conscience and discretion of the triors, upon the hearing of the evidence. (1 *Cowen*, 439, *note.* 1 *Denio*, 305.) Upon the challenge the juror may be examined, but his opinion upon the character and extent of his bias is by no means conclusive upon the triors. (1 *Com-*

*stock,* 379.) ' 2. The triors are the exclusive judges of the weight to be attached to the evidence on the question of favor. (*Smith* v. *Floyd,* 18 *Barb.* 522.) 3. The challenging party is not entitled to an instruction from the judge, that the evidence shows that the juror is not indifferent. (4 *Denio,* 9–35.)

II. The objection taken to the organization of the grand jury is untenable, for the following reasons: It was in the nature of a plea in abatement, and was therefore too late. (1 *Bishop's Cr. Law,* 416.) The accused had plead not guilty, and therefore waived all matter in abatement. (1 *Colby's Cr. Law,* 285. *McMillan* v. *State,* 8 *Sme. & Mar.* 587.) 2. There was no proof, by affidavit or otherwise, by the prisoner, to show the truth of the plea presented. (2 *R. S.* 731, § 75. 1 *Colby's Cr. Law,* 271.) Under a plea of not guilty, the prisoner can only give in evidence whatever negatives the allegations in the indictment or complaint. (*The People* v. *Benjamin,* 2 *Parker,* 201.) After plea of not guilty and a partial trial, it is too late to object to the mode in which the grand jury were organized. (*The People* v. *Griffin,* 2 *Barb.* 427.)

The judgment should be affirmed.

GEO. G. BARNARD, J. The prisoner was tried and convicted, in the general sessions, of grand larceny.

In the impanneling of the jury one of them was asked "if he had formed an opinion as to the general character of the prisoner." He replied that he had; that "his general character was bad." Again, "that he was biased." Those admissions rendered the juror incompetent. The prisoner was entitled to a fair trial, before an impartial jury. If one of the jury was prejudiced against him it can hardly be said that he had an impartial trial; or, if he was of opinion that the prisoner's character was bad, that the latter had an impartial jury. The presumption is that a man is innocent, until found guilty.

In this case the juror had formed an opinion that the prisoner was guilty, and he required evidence to remove that presumption. When objected to, he should have been set aside and his place supplied with one who was not " biased," or who thought the prisoner's " character bad."

The juror was not unbiased. (*People* v. *Bodine*, 1 *Denio*, 305. *People* v. *Freeman*, 4 *id.* 9.)

For these reasons the conviction should be set aside, and a new trial ordered.

CARDOZO, J. Concurring in the opinion of Justice Barnard, it is not necessary for me to give my views upon the other question to which Judge Ingraham refers. I only wish to say that the opinion of Justice Strong, in *Lohman's case*, in the Supreme Court, cited by Judge Ingraham on the point discussed by Judge Barnard, cannot be regarded as authority. That case went to the Court of Appeals, (1 *Comst.* 380,) and Judge Gardiner, speaking of the question put to the juror after he had declared his belief that the prisoner's general character was bad, as to whether he could render a verdict on the evidence, says: " The issue to be tried was whether the juror stood indifferent between the parties. This of course depended upon his state of mind. To ascertain this was the object of the examination of both parties. Upon an issue of this kind, from the nature of the fact to be established, the opinion of the juror, derived from his own consciousness, was relevant, competent and primary evidence. If the juror answered in the affirmative, it would have been a declaration that he posessed such ability. That would be but an opinion, but one founded on his own consciousness, and so far entitled to the consideration of the triors, although by no means conclusive upon them. If he had responded in the negative, the answer would, if believed, *have been decisive against his competency.* For although a man may think himself impartial when he is not, *he cannot be a competent*

juror if conscious of an inability to render a verdict without being influenced by previous impressions."

Here the district attorney chose to let the matter stand upon the juror's evidence that he had "formed an opinion that the prisoner's character was bad; that he was biased;" without any inquiry as to whether he could disregard that feeling and render a verdict solely upon the testimony. And that being so, I think, upon the evidence as it closed, the juror's answers, in the language of Judge Gardiner, were "decisive against his competency;" and that the prisoner was entitled to have such an instruction given to the triors.

It would be absurd to say that a man is entitled to have an "indifferent" jury, if it may be constituted of persons who have formed an opinion against his general character, and are already "biased" against him before the trial commences.

The conviction should be reversed.

INGRAHAM, P. J., (dissenting.)   The ground of objection, in this case, as to the juror McDowell, is that he was incompetent, because he had formed an opinion as to the character of the prisoner, and said he was on that account biased.

The juror was challenged to favor.   The prisoner's counsel requested the court to charge the triors, as matters of law, that the juror having stated he had formed a bad opinion of the prisoner's general character, he was incompetent.   This was refused, and the question was submitted to the triors, who found him to be competent.

I am of the opinion that on a challenge to the favor, the court should not instruct the triors as requested by the prisoner's counsel.   It is the duty of the court to submit the question to the triors, and if that is done, they are to pass upon the question whether the challenge was sustained.   It by no means follows that be-

Allen *v.* The People.

cause a juror was impressed with a belief of the bad character of the prisoner, he was incompetent to try the question of guilt or innocence. In *Freeman* v. *The People*, (4 *Denio*, 35,) whether a juror was disqualified by the bias he had as to the character of the prisoner, was held to be a question of fact, to be disposed of by the triors. It would not have been sufficient on a challenge for princpal cause. And the court say: "It is not a question to be solved by a rule of law, but by the common sense of the triors; and if this has fair play, the difficulty will rarely be found very great. The triors must find that the juror stands impartial and indifferent, or they should reject him. It is the province of the court to say what evidence is admissible on this question of indifference, but its strength and influence in establishing the allegation of favor or bias are for the triors alone to determine."

In this case the court also say: "The instruction should have been that this was evidence to be considered by them, and if it convinced them that actual bias existed, the juror ought to be excluded."

In *Costigan* v. *Cuyler* (21 *N. Y. Rep.* 134) it was held that the decision of the triors upon the evidence would have been final.

In *Dauchy* v. *The People*, (22 *N. Y. Rep.* 147,) Welles, J., says: "It is clearly settled by authority that the decision of the triors is final upon the question of fact whether the juror stands indifferent, which is in all cases the question to be decided by the triors. The decision of the court, in admitting or rejecting evidence, is subject to exception. The triors are to receive such evidence as may be laid before them, and a bill of exceptions will not lie to correct any error in their finding."

In *O'Brien* v. *The People* (2 *Abb. N. S.* 368, 372) it is said: "The challenge was for favor, the decision of which, as a question of fact, was final."

In *Smith* v. *Floyd* (18 *Barb.* 522) the juror challenged to

the favor was examined, and testified that he had formed an opinion as to a custom in a town which formed the subject of the action. The counsel requested the court to charge the triors that the testimony showed the juror not indifferent. This was refused, and an exception taken. The judge says, "this was not a question of law upon which the defendant was entitled to have the instruction of the court, but it was to be referred to the intelligence and good sense of the triors."

And in *The People* v. *Lohman*, (2 *Barb.* 216,) where the juror, on a challenge to favor, stated he had an opinion unfavorable to the prisoner as to general character, but the triors found against the challenge, Strong, P. J., says: "It is not in general sufficient to justify the triors in setting aside a juror as not indifferent, that he has formed an unfavorable opinion of the character of the accused. If it should be, notorious offenders could not be tried at all."

My conclusion upon this question is that upon a challenge to the favor, the court must decide as to the admission of evidence to the triors, and any error in this respect may be corrected by exception, but upon the facts the court has no right to decide either that the evidence is sufficient or insufficient to sustain the challenge; but that the duty of the court is to submit all the facts to the triors, who alone are to decide whether or not the challenge should be sustained.

The objection as to the courts of oyer and terminer is not well taken. Whatever objection there may have been, under the English system, the provision of the Code has relieved the difficulty. The 20th section directs that the courts of oyer and terminer shall be held twice annually, in every county, and as many more terms as the judges shall appoint. The 23d section provides for extra courts to be appointed by the governor, and the 24th section provides for the adjournment of any court to a future time.

The holding of one branch of the court does not prevent the holding of the regular courts as directed by the statute.

Besides, the objection should have been taken before pleading to the merits. It is not available under the plea of not guilty.

I think the judgment should be affirmed.

New trial granted.

[First Department, General Term, June 6, 1870. *Ingraham, P. J.,* and *Cardozo* and *Geo. G. Barnard,* Justices.]