THE PEOPLE, &c., Defendants in Error, *v.* HUGH MALLON, Plaintiff in Error.

(GENERAL TERM, FOURTH DEPARTMENT, OCTOBER, 1870.)

It seems, that the provisions of the Revised Statutes for summoning additional jurors, in criminal cases (2 R. S., 733, § 33), have reference to the summoning of talesmen to serve in, and, for, a particular trial; and that the act of 1870 (p. 952, chapter 409), makes provision for the summoning of jurors to serve, as part of the regular panel, for the remainder of the term.

It seems also, that there is no conflict between the provisions of the two statutes, and that the act of 1870 has not repealed the section (§ 3, id.) of the Revised Statutes mentioned.

It seems, that if the order entered under section 3, (id.,) directs the summoning of additional persons " from the county at large," there is a substantial compliance with the provisions of the statute, although the *venire* fails to specify from whence such persons are to be summoned.

Where a juror was sworn and examined, as to whether he had formed or expressed an opinion as to the guilt or innocence of the prisoner, and no

The People *v.* Mallon.

ground of challenge was specified.—*Held*, upon appeal, that it would be presumed that the challenge was upon grounds indicated by the examination; and, as most favorable to the prisoner, for principal cause.

An opinion as to the prisoner's guilt, purely hypothetical, depending on the truth or falsity of accounts in newspapers, is not such an opinion as will disqualify a juror for principal cause.

But where the proposed juror in a capital case stated upon principal challenge, that he had read accounts, and formed an opinion as to the prisoner's guilt or innocence, which was unaltered, and which it would require evidence to remove, and that he could not exactly sit indifferently from the facts which he had heard; and afterward, when cross-examined stated, that if sworn, he would try to be governed by the evidence, but would have a little prejudice; and again, that he meant by his answer, that he had read the evidence given in the newspapers, and assuming the statements to be true, he had formed an opinion, but that it would not affect his mind in determining the case on evidence.—*Held*, that it was inferable, that the juror had formed an opinion, of which he had not been able to divest himself, that the prisoner was entitled to the benefit of a doubt, and that the acceptance of the juror was error, for which upon writ of error, a new trial would be granted.

ERROR to the Oyer and Terminer of Oneida county.

The plaintiff in error was indicted in the Oneida Oyer and Terminer in June, 1870, for the crime of murder in the first degree, was arraigned upon the indictment, pleaded not guilty, and was put upon his trial on the 29th of the same month, whereupon the prisoner's counsel, after stating objections to the drawing of the original panel of jurors, made also an objection as follows: "I next object to the new panel of one hundred as being improperly drawn, or improperly summoned, and improperly here. That they have no right to sit in this case as drawn," and called the sheriff of Oneida county, who was sworn, and produced the precept under which the new jurors objected to had been summoned, which ran as follows:

"STATE OF NEW YORK, COUNTY OF ONEIDA, *ss:* The people of the State of New York to George F. Weaver, Esq., sheriff of our said county of Oneida, greeting:

"We command you that you summon one hundred jurors, duly qualified as the law directs, to be and appear before our Court of Oyer and Terminer, in and for our county of Oneida, at the court-house in the city of Rome, on the twenty-eighth

day of June, 1870, at nine o'clock in the forenoon, and so from day to day until discharged, then and there to serve as petit jurors in and for our said county, in the case of The People of the State of New York v. Hugh Mallon, on an indictment pending against him in the said court for murder in the first degree, and have you then and there this writ.

"Witness, Hon. Charles H. Doolittle, justice of the Supreme Court and judge of the said Court of Oyer and Terminer, the twenty-seventh day of June, 1870.

"C. H. DOOLITTLE,

"*Justice of Supreme Court, and presiding judge of court.*

"JAMES B. PADDON,

*Clerk.*"

The prisoner's counsel, upon the production of this precept, further objected to it, as not authorizing the sheriff to bring into court the persons produced under it, according to statute. The sheriff testified that the precept was the only paper relating to the matter of which he had any knowledge; but that he was in court when the order, that one hundred additional men should be summoned by him, was made and entered on the minutes.

It appeared from the minutes of the court that the precept had been issued by virtue of proceedings entered therein as follows, viz.:

"June 27th, 1870, the day assigned for the trial of this cause, the prisoner and his counsel being present, the district attorney moved that more jurors be summoned under 2 R. S., p. 733, § 3, the better to form a jury for the trial of this cause; and the court being satisfied it was proper so to do, ordered that one hundred jurors be summoned, which order was duly entered on the minutes of the court, a copy of which is as follows:

| THE PEOPLE *agt.* HUGH MALLON. | *Indictment for murder in the first degree.* |

"There being only twenty jurors' names in the box, on motion of the district attorney, it is ordered by the court,

The People *v.* Mallon.

pursuant to the statute, that the sheriff of the county of Oneida do forthwith summon from the county at large one hundred persons, duly qualified to serve as jurors, to *complete the number reqaired by law*, to attend on Tuesday morning, the twenty-eighth day of June, at nine o'clock in the forenoon of that day."

The objections of the prisoner's counsel were thereupon overruled by the court and an exception was duly taken. The jurors were then called, sworn, and examined as to their competency. Various objections were made and exceptions taken during the impanneling of the jurors. So far as material to the decision, they are fully set forth in the opinion of the court.

*D. C. Pomeroy and H. O. Southworth*, for the plaintiff in error, argued substantially as follows:

There was no jury legally impanneled to try the case.

The additional number of persons, even if the statute referred to in the order has not been repealed, were illegally summoned. The sheriff swears that the precept was all the paper he saw or had any knowledge of, and the precept *duly signed by the judge and the clerk, and sealed by the clerk*, must therefore be regarded as the order named in section 3 (2 R. S., 733). The precept runs: "We command you *that you summon one hundred jurors, duly qualified as the law directs*, to be and appear, &c.," without saying whether they must be summoned "from the bystanders" or "from the county at large." But the statute is: "When twenty-four jurors, duly drawn and summoned, do not appear, or when by reason of there being one or more juries impanneled, &c., there shall not remain twenty-four ballots containing the names of jurors then attending, the court shall order *the sheriff* to summon *from the bystanders*, or *from the county at large*, so many persons, &c." The statute invokes the discretion of the court as to whether the sheriff shall summon these additional jurors "*de circumstantibus*," men before the court and *looked upon by the court*, or whether, the court

being satisfied that a jury cannot be obtained in the court-house or near by, the sheriff shall summon them "from the county at large."

This discretion the court must *exercise* and cannot delegate to the sheriff. The sheriff must continue a ministerial officer. This is the policy of the statute as to these two alternatives. The court *threw the responsibility* upon the sheriff, and this was error.

It is held under the statute as to the issuance of a precept by the district attorney, that the omission to do so, is fatal. (2 Parker, Crim. R., 148.)

Other objections to the precept, &c., were specified, and it was also contended that, as the act under which the additional jurors had been summoned (2 R. S., 733, § 3) was loose and unsatisfactory and objectionable in leaving to the sheriff too much power in the selection of jurors, and in order that the system of talesmen should again be brought to the "casting of lots," the legislature had enacted the law of 1870 (chap. 409), which, providing a method for procuring "additional jurors," repugnant and inconsistent in its provisions with those of the Revised Statutes, and had superseded and repealed the latter. The provision of the two enactments were discussed at length and the alleged inconsistencies thereof.

They also contended that jurors were improperly rejected and received upon the trial.

*Daniel Ball,* district attorney, and *C. D. Adams,* for the defendants in error, contended that it was not important if the precept was informal or defective, and that the order was the sheriff's authority; that the statute (2 R. S.. 733, § 3) was unrepealed and unaffected by the provisions of the act of 1870, and that there were no valid objections shown to the jurors.

They also claimed that if the proceedings and decisions as to the jurors specified were to be regarded as upon a challenge to the favor, they were no part of the record, citing 4

Denio, 9; 21 N. Y., 134; 22 N. Y., 147; 36 N. Y., 276; 3 Abbott, N. S., 368.

That if the proceedings were to be regarded as upon challenge for principal cause, then that decision was right, citing *Freeman* v. *The People* (4 Denio, 15 and 34).

Present—MULLIN, P. J., JOHNSON and TALCOTT, JJ.

By the Court—MULLIN, P. J.   The first ground relied on by the counsel for the plaintiff in error, to reverse the judgment in this case is, that the persons summoned to serve as talesmen, were summoned pursuant to section 3 of the second R. S., page 733, whereas, they ought to have been drawn and summoned under chapter 409 of the Laws of 1870.

The section of the Revised Statutes referred to provides that when twenty-four jurors duly drawn and summoned, do not appear, or where by reason of there being one or more juries impanneled, or in consequence of persons being set aside, or if for any other reason, there shall not remain in the box twenty-four ballots containing the names of jurors then attending, the court shall order the sheriff to summon from the by-standers, or from the county at large so many as shall be necessary to make at least twenty-four jurors from whom a jury for the trial of an indictment may be selected.

The contingency provided for in the section had occurred; there were not twenty-four ballots in the box, and the court made an order in writing, that the sheriff summon from the county at large one hundred persons duly qualified to sit as jurors, to complete the number required by law, to attend at a time designated in the order.

The persons summoned under this provision of the statute are talesmen, that is persons summoned to serve as jurors on the trial of the case in which they are summoned to serve. And their obligation to attend as such terminates with the trial.   (1 Chitty's Cr. Law, 518 ; Jacob's Law Dic., 572.)

Jurors drawn and summoned under the Law of 1870, become when sworn a part of the regular panel, and are to

serve for the residue of the term for which they are summoned unless sooner discharged by the court.

The objects to be obtained by the two statutes are essentially different. The one is to obtain talesmen, the other permanent jurors. There is no color for claiming that there is a conflict between the provisions of the two statutes, and unless there is, there is no repeal by implication. (*Livingston* v. *Harris*, 11 W., 329; *Harrington* v. *Trustees of Rochester*, 10 W., 547; *Van Rensselaer* v. *Snyder*, 9 Barb., 302; *Dexter and Limerick Pk. Rd. Co.* v. *Allen*, 16 Barb., 15.)

The order of the court directing the additional jurors to be drawn was in conformity with the statute. It directs the summoning from the county at large, and therefore the court exercised the discretion as to the locality from which the jurors may be summoned, which is vested in it by the statute.

The next ground relied on for reversing the judgment is, that persons competent to serve as jurors were rejected, and incompetent ones permitted to serve. The grounds on which the persons alleged to be improperly admitted were challenged was, that they had formed and expressed opinions as to the guilt or innocence of the prisoner. And the ground on which it is alleged competent persons were rejected and not allowed to serve was, that such persons were not shown to have formed or expressed an opinion as to the guilt or innocence of the prisoner.

Before entering on an examination of the facts sworn to by the several persons as to whether they had not formed opinions rendering them incompetent to serve, it is necessary to determine whether the competency of the jurors is before us, so that if we should find them or either of them to be incompetent, we are obliged to reverse the judgment. There are two grounds of challenge to a juror, one for principal cause the other to the favor.

One of the grounds of challenge for principal cause is, that the juror has formed, and expressed an opinion of the guilt or innocence of the prisoner. (*The People* v. *Stout*, 4 Parker Cr. R., 71.) This challenge may be tried by the court,

The People *v.* Mallon.

unless one of the parties demand that it be tried by triers, and when tried by the court, the decision stands as if made by triers.

Having formed and expressed an opinion, is also ground of challenge to the favor, and it may also be tried by the court with the consent of counsel, and they will be deemed to assent, unless they dissent when the challenge is made.

It is the duty of counsel to state the ground of challenge, whether it is for principal cause, or to the favor. And if the grounds stated are such as in law render the juror incompetent, the challenge is to be deemed one for principal cause; but when the causes assigned do not, in and of themselves, render the juror incompetent, but are such as indicate partiality, or bias, or other incompetency, but are not conclusive of it, the challenge is to the favor, and is to be disposed of accordingly. When the cause of challenge is stated, the opposite counsel may demur, or deny the truth of the matters alleged, and put the challenger to proof of them. If he demurs, the facts are admitted, and the question of competency becomes one of law, and the decision may be reviewed on writ of error. If the facts are denied, and they are heard by the court or triers, and are found not to be true, the decision as a question of fact is final, and is not the subject of review.

When the challenge is to the favor, and the existence of the grounds of challenge is found against, the decision of the court or triers on the facts, is final, and not the subject of review. (*Lanches* v. *The People*, 22 N. Y., 147; 21 N. Y., 134; 36 N. Y., 276.) But when there is no conflict of evidence, the question is one of law, and is the decision of the court and may be reviewed. (*Stout* v. *The People, supra.*)

It is competent for either party to challenge first for principal cause; and, failing to sustain it, he may then challenge to the favor, and submit the same evidence to the triers that had been given on the challenge for principal cause, and the triers may upon the same evidence, find the juror incompetent, because of prejudice or partiality.

The People v. Mallon.

No ground of challenge was specified by the counsel for the prisoner, but the juror was examined as to whether he had formed or expressed an opinion, and that must be assumed to be the ground of challenge, and it must also be assumed, that it was for principal cause, as that is the most favorable ground for the prisoner.

Before examining the questions discussed by the counsel for the prisoner, as to whether the jurors, or either of them, had formed or expressed an opinion, it is necessary to ascertain what sort of an opinion it is, that, when formed, disqualifies a juror.

I will not enter on an examination of the cases in which the question has been considered, as they are very numerous and conflicting. I will confine myself to a few of the more recent cases, as the tendency of the courts seem to have been to require an opinion that is to disqualify a juror to be more certain fixed and definite, than was required in the earlier cases.

In the case of *The People* v. *Stout* (*supra*), WELLS, J., says: "An opinion which disqualifies a juror, is one that is absolute, unconditional, definite, and settled in distinction from one which is hypothetical, conditional, indefinite and uncertain." He cites in support of his view, *Freeman* v. *The People* (4 Den., 1); *The People* v. *Bodine* (1 Den., 281); *The People* v. *Honeyman* (1 Den., 121); *Durrel* v. *Mosher* (8 J. R., 445).

Let us now apply this rule to the two jurors, who the counsel for the prisoner insists were incompetent, because they had formed an opinion as to the guilt or innocence of the accused. These were Jones and Brown. Jones testified, that he had formed an opinion, having read an account of the transaction in a newspaper, and he guessed he had expressed it, and it existed in his mind at the time of the trial, and would require evidence to remove it.

If the evidence had stopped here, there could have been no doubt of his incompetency. But on cross-examination by the district attorney he testified, that he was in the habit

The People *v.* Mallon.

of reading newspapers, and that if the paper told the truth in reference to the transaction, he had formed an opinion on it, and this was as far as he had gone; that he would not be governed as a juror by anything but the evidence; that he had not formed any opinion as to whether the prisoner was, or was not guilty.

The evidence on cross-examination shows what sort of an opinion he had formed, that it was purely hypothetical, depending on the truth or falsity of the account in the newspaper, and was not such an opinion as disqualified him.

Brown testified, that he had read about the killing in a newspaper, and had formed an opinion as to the guilt or innocence of the accused; it had never been altered, and evidence would be required to remove it. He could not sit exactly indifferent from the facts he had heard. In cross-examination, he testified that if he sat on the jury, he would try and be governed by the evidence, but he would have a little prejudice. He subsequently said, he meant to be understood by his answers, that he read the evidence at the time in the newspapers, and, assuming the statements to be true, he had formed an opinion; that the opinion thus formed, would not affect his mind in determining the case on the evidence.

It is impossible to read over the evidence of this juror, and not become satisfied that he had entered the jury box with an opinion formed, which he had not been able to get rid of, so that he could say he was not prejudiced; that he would be under the necessity of *trying* to act impartially.

The prisoner is entitled to the benefit of a doubt in a case like this, and I feel constrained to hold, that the court below erred in permitting the juror, Brown, to sit in the case.

This conclusion renders it unnecessary to consider the other questions in the case. The judgment must be reversed and a new trial ordered.

Judgment reversed.