MISSOURI, KANSAS & TEXAS RLY. CO. v. MUNKERS & TERWILLIGER.

1. JURORS; CHALLENGE; *Statutory Disqualification.* Where a technical disqualification is by statute ground for principal challenge of a juror, a juror must come within the very terms of the disqualification, or the challenge will be overruled.

2. ——— *Challenge for Cause; Duty of Court.* On a challenge for cause, when the trial judge is in doubt as to the impartiality of a juror, he should give the parties the benefit of the doubt, and excuse the juror.

3. ——— *Setting aside Verdict; Impartiality of Juror.* Where the trial is completed, and the verdict received, the verdict should not be set aside and a new trial awarded on the ground of a lack of impartiality on the part of a juror, unless that lack of impartiality be made to clearly appear.

4. ——— *Examination of Juror.* When jurors are examined as to their qualifications and impartiality, they should give truthful answers, without equivocation or evasion; but they are not required to know nor to guess that something more is intended than is fairly expressed by the terms of the questions put to them:

### *Error from Morris District Court.*

ACTION brought by *J. C. Munkers* and *W. R. Terwilliger* to recover of the plaintiff in error the sum of $1,518, being the price for the loading of five hundred and six car-loads of stock, at the rate of three dollars per car. Answer, general denial. The action came on to be heard at the April Term 1871, Hon. J. H. Watson, district judge, presiding, and was tried on the 12th of April, before the court and a jury. During the impanneling of the jury, two of the jurors, viz., A. E. Millison and Frank Dorn, after being duly sworn to answer questions touching their qualifications as jurors in the cause, were severally interrogated as follows: "Have you been, or are you interested in any action pending against the defendant?" And to this interrogatory said Millison and Dorn respectively answered in the negative. Said jurors were accepted as qualified jurors, and the said case was tried and submitted to the jury. The jury, after deliberation, returned into court with their verdict, and delivered the same to the judge. The judge returned the verdict, and instructed them to compute the interest, and add the same to the verdict, and thereupon the jury again retired. During the absence of the jury the second time it first came to the knowledge of the defendant in the action that said Millison and Dorn, who were taxpayers in the county of Morris, were subscribers to a fund for the support and prosecution of a certain action then pending on error in the supreme court, wherein "George Morris, *et al.*, were plaintiffs, and the Board of County Commissioners, Clerk, and Treasurer of

said Morris county were defendants," which action was prosecuted for the purpose of restraining and perpetually enjoining said county officers from levying and collecting any tax from citizens of said county for the payment of the interest and sinking-fund towards the liquidation of certain bonds issued by said Morris county to and held by plaintiff in error, and that such was known to be the purpose and object of said action by said Millison and Dorn. The facts relating to said subscription by said Millison and Dorn were unknown to plaintiff in error or its attorney until after the jury had retired under the charge of the court to consider their verdict. Upon this fact being made known to the court by the admissions of the two jurors, the court refused to receive the verdict, and discharged the jury. Subsequently the defendants in error applied to this court for a writ of mandamus, directed to J. H. Watson, Judge, commanding him to receive and cause to be entered of record the said verdict, and a peremptory writ was awarded. (9 Kas., 668.) On the 27th of October 1872, at a regular term of the district court for said county, the mandate of the writ was obeyed by Hon. W. H. Canfield, Judge of said court. The verdict was recorded, judgment rendered in favor of *Munkers* and *Terwilliger* for $1,562.20, motion for new trial made and overruled, exceptions taken, and case made. And from such judgment, and order overruling and denying the motion for a new trial, the *M. K. & T. Rly. Co.* appeals and brings the case here on error for review.

*T. C. Sears,* for plaintiff in error:

1. That the plaintiff in error, and the district court were imposed upon by M. and D., the offending jurors, cannot be denied. The trial was a burlesque upon the administration of justice; and evidently the learned judge who tried the case thought so, or he would not have resorted to the summary means that he felt called upon to employ to prevent the outrage. The civil code (§ 270) provides that any petit juror who "has an action between him and either party, may

be challenged for such cause; in which case the same shall be considered as a principal challenge," etc. In other words, if any juror shall be called, who shall belong to this class, it is a good ground for the rejection of that juror. Now do Millison and Dorn come within this class? Both were taxpayers of the county of Morris; an action was then pending to restrain the collection of a tax in payment of obligations held by plaintiff in error against said county, and they had subscribed to a fund to *carry on that suit.* The action was one of common interest, affecting all the taxpayers of the county. I do not claim that this fact *alone* would render them obnoxious to the charge of incompetency as jurors, if objection was made on this ground. But the plaintiffs in that action, so far as appears, had *no more* interest in the result than Millison and Dorn. In *equity* and in *fact, all* parties who came in and contributed to the expenses of the action, were parties, and might come in and avail themselves of the benefit of the results, if it were a proper case, although they may not have been named as parties. They had manifested their interest in the action, and their desire to be benefited by its results, by subscribing to a fund to carry it on. Were they not in a position to be liable to the challenge allowed by the statute, just as much as the party or parties who were nominal plaintiffs? In fact, they *were parties* to the action. They made themselves liable to pay the costs and expenses of the action, and in case of success would realize the advantages thereof.

The challenges mentioned in the statute are usually made by parties in our state in an informal manner; and I submit that the question proposed to them by counsel for plaintiff in error amounted to a challenge. They had each been sworn to answer truthfully all questions touching their qualifications as jurors in that case. "Have you been, or are you interested in any action pending against the defendant?" was propounded to each of the jurors; to which each replied in the negative. Their answer is successfully impeached by their *conceded* act. They had shown that they had an interest in an action then pending against the defendant, by an act of

the most unequivocal character, viz., the payment of money to carry it on. Their answer, then, was untrue, and they undoubtedly knew it. Whether they did or not, is quite immaterial. The result was the same to the defendant. By a suppression of the facts, the defendant was induced to waive the exercise of the right of challenge *for cause*, and, failing in that, a peremptory challenge.

2. By § 306 of code, subdivision two, "misconduct of the jury" is given as one of the grounds for new trial. I respectfully submit the action of the jurors was a clear case of "misconduct." A question material in its character, tending to show, if true, if not disqualification, certainly bias, was submitted to them, and their answer was untruthful. The court cannot say that the plaintiff in error was not aggrieved. The inevitable presumption would be, that if the action of the jurors had been known to the company it would have exercised every legal means to have them removed from the jury. But it may be claimed that their answer was strictly true, inasmuch as that action was not *in form* against the plaintiff in error. This, to my judgment, makes the matter really worse for them. They evidently knew the object of the question, and to what point it was directed: that counsel for the company was inquiring as to any interest they might have in the action pending against the county authorities, in which the company was interested. Upon this theory they were clearly guilty of evasion, and substantially of falsehood. The plaintiff in error however, was the real party in interest, the object being to repudiate certain securities that the company held against the county. The conduct of the jurors, upon any fair, reasonable, or just hypothesis of moral or legal ethics, was a clear instance of *misconduct*; and for that reason the court below erred in not granting a new trial.

3. But if this conduct of the jurors did not amount to what in law the courts term "misconduct," was it not "irregularity in the proceedings of the jury?" I suppose this means *any act* of any juror called to try a case, that shall tend to show that the trial was not a fair and impartial one.

4. There are some considerations arising out of the compliance with the writ of mandamus, that certainly deprived the plaintiff in error of some rights that the statute gives all parties in a trial by jury. Sec. 283 of the code provides, among other things, that "When the verdict is announced, *either party may require the jury to be polled,* which is done by the clerk or the court asking each juror if it is his verdict." And § 284 provides, "That the verdict shall be written, signed by the foreman, *and read by the clerk* to the jury, and the inquiry made whether it is their verdict." The fact is, that the court refused to *receive* the verdict, and there and then *discharged the jury.* This was the action of the court, and not of the party. This court has held that the court below erred, holding that he should have received the verdict. This is undoubtedly correct as an abstract legal proposition, and this was all that was before the court in the mandamus proceeding; but the practical effect of it is, and was, to deprive the plaintiff in error of his statutory right to poll the jury. Supposing that, after the verdict was announced, the counsel for the company desired to poll the jury, and the court had arbitrarily denied him that *right;* would it be doubted for a moment that such a refusal would be error? It cannot be said that the company was not prejudiced by loss of its opportunity to exercise this right. Plaintiff in error could not demand the right to have the jury polled, because they had been discharged at a prior term. The action of the *court* had placed it beyond the power of the company to ask this compliance with the statute, and the exercise of its right under it. Hence it seems to me inevitable, that the recording of the verdict, without this opportunity to exercise a legal right, is error, for which the judgment should be reversed.

The proceeding indicated by § 284 should also be considered. The verdict was required to be "signed by the foreman *and read by the clerk to the jury,* and the inquiry made whether it was their verdict." This was confessedly not done, as the court below had placed it beyond the power of

the clerk to perform his duty. Any proceeding by a court that shall deprive a party of the privilege of having the provisions of the law complied with in taking his property, or fixing a pecuniary liability, is manifestly erroneous.

In the mandamus proceeding, this court correctly decided that the judge in the court below was bound to receive the verdict. It was clearly error for him to refuse to receive it, and to discharge the jury. But could the supreme court command him to do anything more than to *commence* to act at the very point from whence he diverged into a wrong channel, viz., to *receive* the verdict? For right at this precise juncture the rights of the plaintiff in error may be exercised. If, after *receiving* the verdict for record, the action of the court below would have deprived it of the power or opportunity to exercise its rights under the statute, it is manifest that there is error. The history of the trial as detailed in the "case," is an anomaly. Other points might be raised, but I shall disregard them, preferring to place our application for a new trial upon the broad ground of a manifest injustice. Had the verdict been received, as it should have been, it is manifest that upon the Company's motion a new trial would have been properly granted. But unfortunately we were deprived of this opportunity. I most respectfully and earnestly submit to this court that such a proceeding as is indicated in the papers in this case, falls far below the dignity of a fair, honest, impartial judicial determination of the rights of the parties.

*McClure & Humphrey*, for defendants in error:

1. When the proceedings in mandamus were commenced against Judge Watson, (9 Kas., 668,) Morris county was a part of the Fifth Judicial District. Before the peremptory writ was awarded Morris county was detached from the Fifth, and attached to the Eighth District, of which Judge Canfield, who executed and made return to the peremptory writ, was the presiding judge. The writ was properly prayed to be

issued against the judge by name. (See 7 Peters, 634; 8 Ohio St., 201.) It issues to the person, but only to the person as *an officer* having the power, and whose duty it is to perform the act commanded to be done. If at the time the writ issues the person to whom it is directed by name is not such an incumbent of the office as that he has it in his power to do the act commanded, but the power and function in that instance has devolved on another by operation of law, then the act required to be done, being *an official act*, and the writ directed to *an officer*, the present incumbent of the office or the officer upon whom the functions devolve, and who alone can, is the proper party to obey the mandate. If Morris county had remained a part of the fifth judicial district, and the office of judge of that district had devolved on a successor to Judge Watson, it could not then be objected that his successor had no right or power to obey the writ. That part of the fifth district embracing Morris county became merged in the eighth judicial district, and Judge Canfield became so far as Morris county is concerned the successor of Judge Watson.

2. There was no error in refusing a new trial. The new trial was urged on the grounds of misconduct of the jury, and irregularity in their proceedings. It is alleged in support of these grounds that two of the jurors who tried the case were subscribers to a fund for the support of a prosecution pending in error in the supreme court in which the plaintiff in error, though not a party, was interested. The jurors were not parties to that action; neither had they subscribed to any fund to support this action at bar, and they were not within any rule of disqualification as jurors. (See § 270 of the code.) The fact as stated furnished no evidence of itself that the jurors named were biased or prejudiced against the plaintiff in error, and nothing is stated tending to show that the jurors were prejudiced against the plaintiff in error, or that plaintiff in error suffered any damage from the supposed cause or prejudice.

The opinion of the court was delivered by

BREWER, J.: The question in this case arises on the overruling of a motion for a new trial.* The grounds of the motion are irregularity and misconduct of the jury. The facts are these: Two of the jurors when called and sworn as to their qualifications were asked whether they had or were interested in any action pending against the defendant, and answered in the negative. They were at the time subscribers to a fund for the support and prosecution of an action then pending in this court wherein certain citizens of Morris county

1. Jurors; challenge; statutory grounds. were plaintiffs and the county board, clerk and treasurer of that county defendants.† Such action was prosecuted for the purpose of restraining said county officers from collecting any taxes for the payment of interest. and principal of certain bonds issued by said county to, and held by said railway company defendant herein. Neither the jurors nor the company were parties of record; and therefore the answers were strictly correct. But it is claimed that they were only technically so; that the company was the real party in interest, and that substantially the controversy was between certain citizens of Morris county, the two jurors among the number, and the company, the former seeking to avoid certain county obligations held by the latter. Under § 270 of the code, (Gen. Stat., 680,) it is ground of principal challenge that a juror "has an action pending between him and either party." A statutory disqualification like this is not to be enlarged or diminished by construction. The language is plain, the meaning obvious. Its existence is absolute. cause for challenge, and no inquiry is permissible into the condition of the juror's mind, or its effect upon his feelings or prejudices. His interest in such action may be slight; he may be only a nominal party; he may be utterly indifferent as to its results; he may be the best man in the community, the most discriminating in his judgments, the most impartial

---

* SEE *Munkers v. Watson, Judge,* 9 Kas., 668.

† *Morris, et al., v. Morris County,* 7 Kas., 576.

between the litigants, yet, if this statutory disqualification attaches, a principal challenge must be sustained. Because it is thus peremptory and absolute, it ought not to be enlarged by judicial construction. An actual unfitness of any juror can be shown on a challenge for cause, and, when shown, will remove him from the panel. It follows from these considerations that no ground for principal challenge existed, and that if one had been made it ought to have been overruled.

Ought a challenge for cause to have been sustained? There is no pretense that the facts indicate in the jurors any interest or feeling in the present contest, or any friendship or partiality for the plaintiffs. The only possible claim is, that they show a hostility, a prejudice, or an unfriendly feeling to the defendant. The sole evidence of this unfriendliness is the fact that they question the validity of certain obligations issued by the county to the defendant, and are contributing to the expense of legal proceedings to test that validity. Impartiality of jurors is essential to the due administration of justice. They should be, in the language of the books, *omni exceptione majores;* and we should be unwilling by any decision to weaken the safeguard thrown around the jury-box. Where the trial judge after an examination of a juror is in doubt whether he be impartial, or biased and prejudiced, he ought to give the jury-box and the parties the benefit of the doubt, and excuse the juror. But when the trial is complete and the verdict returned, the verdict ought not to be disturbed by reason of the possibility of prejudice in the minds of one or two of the jury towards the losing party. The proof of prejudice should be clear, otherwise great injustice might be done to the successful party as well as to the juror. Indeed, it has been decided in some cases, and said by some judges to have been the rule at common law, that no verdict should be set aside on account of the disqualification of a juror which existed at the time he was sworn; that if he was then disqualified, and the fact was not elicited on his *voir dire*, and he was sworn in the case, no advantage could thereafter be

2. Challenge for cause.

3. Setting aside verdict. Partiality of juror.

taken thereof, though court, counsel, and parties were all ignorant of this disqualification. *Gillespie v. The State,* 8 Yerger, 507; *Magnes v. Stewart,* 2 Cold., 309. We do not wish to be understood as endorsing this statement as broadly as it is made. We simply cite it as showing to what extent courts have gone in this direction. It is enough for us now to decide, that before a court is justified in setting aside a verdict, on the ground of a disqualification of one of the jurors which existed at the time he was sworn, the proof of that disqualification must be clear. We do not think the facts in this case are sufficient evidence of prejudice, or unfriendly feeling, toward the defendant to justify the setting aside of the verdict. Hilliard on New Trials, 155, § 66; *State v. Wilson,* 8 Iowa, 407; *Commonwealth v. O'Neil,* 6 Gray, 343; *Moore v. Cass,* 10 Kas., 288.

But it is claimed that the answer of the jurors was untrue, or evasive—that it misled the counsel and prevented further inquiry and formal challenge, and that this amounted to misconduct or irregularity of the jurors which demands a new trial. The answer was true, literally true. Counsel for the company on this point ingeniously says: "But it may be claimed that their answer was strictly true, inasmuch as that action was not *in form* against the plaintiff. in error. This, to my judgment, makes the matter really worse for them. They evidently knew the object of the question, and to what point it was directed; that counsel for the company was inquiring as to any interest they might have in the action pending against the county authorities, in which the company was interested. Upon this theory they were clearly guilty of evasion, and substantially of falsehood." We do not understand how it can be said that "they evidently knew the object of the question," if by that is meant that they knew something more was intended than was expressed by the terms of the question. We to-day are unable to say, from anything before us, that the counsel for the company at the time had any more in his thought than he expressed in his question, or desired any further informa-

16—11 KAS.

4. Examination of jurors.

tion than he actually received. All beyond is mere matter of speculation and guess-work. Before we could affirm misconduct of the jurors we should be compelled to *guess* that counsel intended more by his question than he expressed, that the jurors knew what he intended as well as what he expressed, and intending to deceive answered only what was expressed and left unanswered what was intended. That is an exercise in metaphysics which is outside the function of any judicial tribunal. We think the motion for a new trial was properly overruled. Counsel has discussed in his brief some questions as to the effect of the mandamus heretofore issued by this court on the rights of his client. We think the decision in the mandamus case disposed of all those questions. The judgment of the district court will be affirmed.

All the Justices concurring.