WARREN OYER AND TERMINER, July 18, 1823. Before *Walworth*, Circuit Judge, and the County Judges.

### THE PEOPLE *vs.* RICHARD FULLER.

That an indictment was recently found is not a ground for putting off a trial in a capital case, especially where the prisoner has been a long time in prison, charged with the offence.·

It is not good ground of challenge to the array, that the jury was drawn and the panel certified by the deputy clerk, instead of the clerk, who was absent.

It is not a good ground of challenge to a juror for principal cause, that he had expressed his opinion hypothetically.

Where a juror is challenged for favor, and triors are appointed, the juror himself may be sworn as a witness before them, to state or explain any facts which do not impeach his character or his motives.

Intoxication is a voluntary deprivation of reason, and can not be given in evidence, even on a trial for murder, to excuse the offender.

Where a person carelessly discharged a gun loaded with ball into the highway, when it was quite dark, and thereby unintentionally killed a person who was passing, and whom he did not see, such killing was manslaughter at common law.

The prisoner was indicted for the murder of Andrew Fish, and was tried at the Warren Oyer and Terminer before WALWORTH, *Circuit Judge,* and two Judges of the County Court.

*Wm. Hay, Jun.,* and *R. Weston,* of counsel for the prisoner, moved to put off his trial on the ground that the indictment had been recently found, at the court then sitting.

THE COURT decided that as the prisoner had been committed many months before, on the charge of murder, on the finding of the coroner's inquest, the recent finding of this indictment. was no cause for putting off the trial.

The counsel then challenged the *array,* on the ground that the jury was drawn and the panel certified by the deputy clerk, in the absence of the clerk.

THE COURT decided that in the absence of the clerk, the deputy might lawfully draw the jury and certify the panel

The People v. Fuller.

That the statute authorizing clerks to appoint deputies, (1 *R. L.* 523,) was meant to provide for a case of vacancy in the office, and to make it compulsory on the clerk to have a deputy. But the clerk at common law might also execute the office by deputy; and the case of the clerkship of Ulster county was mentioned, which, before the revolution, had been granted to Gov. George Clinton for life, and was executed by P. Tappen, his deputy, during the life of Gov. Clinton.

The prisoner thereupon, for the purpose of evading a trial at that time, challenged peremptorily twenty of the jurors, and challenged others for cause, &c., as having made up and expressed an opinion as to his guilt or innocence.

The Court decided that where a juror had no knowledge of the facts except from hearsay, and had only expressed an opinion hypothetically, as, "*If what I have heard is true,*" &c., he was not thereby rendered incompetent.

A juror was challenged for favor, and triors were appointed by the court; a witness on the part of the prisoner testified that in a conversation with the juror, a few days previous, he understood him to express a decided opinion as to the guilt of the prisoner.

The counsel for the people asked that the juror might be sworn and testify before the triors, to explain the conversation which was testified to by the witness.

The Court decided the juror might be sworn for that purpose, as the question did not go to impeach his character or motives, in any way. He was sworn, and testified that he never had made up any opinion as to the guilt or innocence of the accused, and had not expressed any opinion to his knowledge, except hypothetically, as, "If what he had heard was true," &c. And if the other witness had understood him to express a positive opinion, he had either misunderstood him, or that he, the juror, had said what he did not intend to say; and that he had no recollection of ever saying so. The triors, after consulting

together a few minutes, decided that the juror was indifferent between the prisoner and the prosecution, &c.

The counsel for the prisoner offered to prove that he was intoxicated at the time of the commission of the offence.

THE COURT decided that the evidence was improper; that intoxication was a voluntary deprivation of reason; that if a person under the influence of liquor does an act which would be a crime if he were sober, the intoxication is an aggravation of the offence, and can not be given in evidence in mitigation of the guilt of the prisoner.

The prisoner discharged his gun, loaded with a ball, into the public highway about 9 o'clock in the evening, when it was quite dark, and killed Fish, who was in the highway, a few feet only from the muzzle of the gun; and if he shot him intentionally, as the evidence tended to show, there could be no doubt but that he was guilty of murder.

THE COURT charged the jury, that if they should be of opinion that the prisoner was not guilty of murder, but that he shot the deceased unintentionally, without knowing that he was there, still it was not *excusable homicide.* For the act of firing into the street in the manner described, was gross carelessness, and was calculated to endanger the lives of persons passing along the street. That killing a human being by such carelessness, would constitute the crime of *manslaughter.*

The jury found the prisoner guilty of manslaughter only, and he was sentenced to fourteen years' imprisonment in the state prison.