The People *v.* Christie.

---

New York General Term. November, 1855. *Clerke, Morris* and *Mitchell,* Justices.

The People *vs.* Edward Christie and others.

Where a juror, on being called, is challenged on the ground of his having formed or expressed an opinion as to the guilt of the prisoner, such juror may be examined as a witness for the purpose of sustaining the challenge.

A juror when examined as a witness for the purpose of sustaining a challenge to the favor, will not be excused from answering whether he has any prejudice or bias against a religious sect, on the ground that such answer would disgrace him.

Where on the trial of several defendants on an indictment for a riot, it appeared that a secret society had been organized for the purpose of repressing the class or sect to which the defendants belonged, it was held to be competent to require a witness, who had been called and testified on the part of the prosecution, to answer on his cross-examination, whether he was a member of such secret society

*Certiorari* to the New York General Sessions. The defendants were jointly indicted for riot, committed in the ninth ward of the city of New York, on the 4th day of July, 1853; the defendants pleaded not guilty; and on the 14th day of December, 1853, the issue of traverse so joined, came on to be tried

before Hon. Francis Tillou, recorder, &c., the defendants being tried jointly.

On the first juror, Samuel Carson, being called, he was challenged for principal cause by the defendants, on the ground of his having formed or expressed an opinion of the guilt of the prisoners, or some of them. This challenge was denied by the people, and issue was thereupon joined. The defendant's counsel, John McKeon, offered as a witness, to prove the challenge, the juror himself. This was objected to by the people, and the objection sustained by the court; to which decision the defendant's counsel excepted.

It was admitted for the purpose of the argument as to the challenge of jurors, that on the 4th day of July last past, there was a procession of a society called the Ancient Order of Hibernians, a society composed of Irishmen and Roman Catholics; that the defendants were members of that society. And it was admitted, for the purpose of the argument as to the challenge of jurors, that a portion of the defendants are Catholics, and a portion foreigners; that the alleged riot took place in the neighborhood of Abingdon square, in the ninth ward of the city of New York, through which the procession passed, and that during the riot, expressions of a hostile and insulting character were used by some of the parties engaged, as for instance, "kill the d—d Irish," "kill the d—d Popish ——" ——," "kill the d—d Yankees." It was also contended by the defendants' counsel, for the purpose of the challenge to jurors, that a strong prejudice existed amongst the police and inhabitants of that section of the city against Irish and Roman Catholics.

Several jurors were called and rejected; some were peremptorily challenged; one of the jurors being called and challenged to the favor, on the ground that he had a bias, prejudice or impression against the prisoners or some of them, triers were appointed by court; one juror so challenged for favor was rejected by the triers, when James Black was called as a juror, who was challenged to the favor by defendants' counsel, on the ground that the juror called had a bias, preju-

dice or impression against the defendants or some one of them.

This challenge was denied by the people, and issue was thereupon joined. The same triers as in the former cases were, by consent, in this case appointed. The defendants called as a witness to prove the challenge, the juror so called, who, after answering several questions in relation to the ground of challenge, was asked the following question:

Q. Have you any bias or prejudice against Roman Catholics?

To this question the district attorney objected, and contended that the juror was not bound to answer, if he thought it would disgrace him. The court sustained the objection of the district attorney, to which decision the counsel for defendants excepted: The court thereupon informed the witness that he was not bound to answer the question, if in his opinion the answer would tend to disgrace him; to which instruction and decision the defendants' counsel excepted. On the question being put, the juror declined to answer.

The defendants then moved the court to compel the juror, as being a witness, to answer the question, which the court refused to do. To which decision and refusal the defendant's counsel excepted.

Timothy H. West was called as a witness on the part of the prosecution, and testified as follows: That he lived in No. 23 Eighth avenue; is a house carpenter; saw the procession; there was a space of twelve feet or more through which the stage driver passed; heard the expression—" Kill the d—d son of ———." After witness left his son in Troy street, witness returned to the stage. He then met a policeman and told him the " Order of Hibernians had attacked the stage-driver, and were about to murder him on the spot." McPherson went in and told them to disperse; two men made a pass at him; I stepped back to Eighth avenue; he did not see the marshal at the time of the affair with the stage.

On being cross-examined, the witness was asked:

Q. Do you belong to the Order of United Americans?

This question was objected to by the people. The objection

was sustained by the court, and to this decision the counsel for the defendants excepted. The following question was then put:

Q. Do you belong to any order?

This question was objected to by the people. The objection was sustained, and to which decision the defendants excepted.

*N. Bowditch Blunt* (District Attorney) for the people.

*John McKeon* for the defendant

*By the Court,* MORRIS, J.—At the foundation of American jurisprudence, is the right to be tried by an impartial, unprejudiced jury; it is a right paramount to all others, and is not to be sacrificed to the fear or apprehension of wounding the feelings of others.

In this case, a new trial should be ordered for the following errors:

1st. The juror, Carson, should have been received as a witness to prove that he had formed or expressed an opinion of the guilt of the prisoners, or of some of them.

The juror who has formed an opinion and has not expressed it, is the only source from which the fact of the "formed opinion" can be obtained. There is neither dishonor or disgrace attached to the fact, that a man had formed an opinion upon any subject which agitated public consideration, and there is no reason why the juror should not be used as a witness, to prove the cause of challenge.

The prosecution at the trial did not object that the challenge assigned against this juror, should not have been for principal cause, but to the favor, and, therefore, he can not take such position here.

2d. Under the admissions of facts made by the counsel as the foundation of challenge, the court erred in refusing to compel the juror, Black, to answer the question, whether he had "any prejudice or bias against Roman Catholics."

This question should have been permitted.

3d. The question to the witness West, whether he belonged "to the Order of United Americans," should have been permitted by the court; for had it, by the witness, been shown that he did, and that such order was established with prejudice against, and to oppose Irish and Roman Catholics, such fact was proper for the jury to receive, to enable them to determine how much, if any, the witness's evidence was warped by the principles of his order.

Proceedings reversed

