Per Curiam.
In the view which we take of this case, it will be sufficient, if we notice with any particularity the points of the plaintiff in error, based upon the overruling of his challenges to two of the persons who were sworn upon the panel of jurors by which he was tried and found guilty.
One of them was challenged for principal cause,, and as having formed and expressed an opinion. Both were challenged for favor, and as not being indifferent and impartial.
There has always been a distinction between these two kinds of challenge, and there is yet, notwithstanding modern legislation, on the subject. The challenge for principal cause asserts that there are facts, from which the law will say, that the person proposed to sit as a juror, is not indifferent between the parties. If it is seen that a certain state of facts does exist, the law does, ipso facto, declare that result. If one has expressed an opinion on the prisoner’s guilt, it is a good ground of challenge for principal cause (People v. Vermilyea, 7 Cow. 108 ; People v. Allen, 43 N. Y. 28). Though he has not expressed an opinion, if he has formed one, upon reports and what he had read, which it would need testimony to remove, he was, by the old law as a rule of law, disqualified (People v. Mather, 4 Wend. 229); even though, if testimony should do away the circumstances on which the opinion was based, he would not believe the party guilty (Ib). ; Cancemi v. People, 16 N. Y. 501).
It has been held, that what is said by one proposed* on his examination, on a challenge for favor, may not *5 be referred to, to determine the correctness of the holding by the trial court on the challenge for principal cause (Cancemi v. People, supra).
We do not find that the converse has ever been held, and where, as in this case, the court is the trier of the challenge for principal cause, and also of the challenge for favor, and the latter immediately succeeds the other, we see no reason why, on the determination of the latter challenge, it should not consider all that has been said by the person proposed as a juror on his examination on both challenges, nor why an appellate court, with power to review the holding on the latter challenge, should not have the power- also to consider all that the proposed juror had stated on examination on either challenge.
We are now ready to learn what the challenged persons stated on oath, of their state of mind as to the prisoner’s guilt.
One of them, Betts by name, had read in a local newspaper a part of the account of a former trial of the plaintiff in error on the same indictment—that part only which gave evidence made for the prosecution ; he had heard others talk about that trial a good deal; he had never expressed an opinion, but had an impression as to what he believed: an impression which he had formed as to the guilt or innocence of the plaintiff in error from what he had heard and read as to it; which impression had led him to that opinion as to his guilt, so that he had at the time of the impanneling of the jury such an impression, opinion, or belief as to the guilt of the plaintiff in error, that would take evidence to remove. This juror said that he verily believed that he could then render a fair and impartial verdict upon the evidence; that he meant by that, that he would endeavor to weigh the testimony impartially, and render a verdict accordingly, and that was all that he meant; but that he did not mean to *6 take back that he would enter upon the discharge of his duties as a juryman with an impression as to the guilt of the plaintiff in error which it would require evidence to remove, but that he thought that his previously formed opinion or impression would not bias or influence his verdict at all, and that he could take the case and decide it fairly according to the testimony, without reference at all to any opinion he might have had. He also said that his opinion or impression was formed on a supposition that the evidence which he had read was true, and that if sworn as a juror he would enter upon the trial with an impression as to the guilt of the plaintiff in error, and that at that present time he had an opinion as to his guilt, and that he supposed that he had an opinion against him as to his character as a man. He also said that the opinion or impression was formed by him on reading the testimony in the newspaper, that he still entertained the same, and had never had cause to change, nor to doubt the truth of it.
The challenges were overruled; and exception was taken thereto.
The other juror was Jennings. He was challenged for favor as not being impartial or indifferent between the people and the prisoner. He too had formed an impression as to the guilt of the prisoner, from reading parts of the published testimony, and from the talk of people, which he thought he had expressed, which impression he still had; but he thought that he could remove it, and would do it, and would be sure to, if he was sworn as a juror; that he thought that he could render a verdict without being influenced by any impression or opinion that he might have had, and that it would not bias or influence his verdict, and that he verily believed that he could render an impartial verdict according to the evidence, notwithstanding any impression or opinion he might have formed.
*7 The challenge to the favor was overruled, and exception was taken to the ruling. Jennings was then sworn, and acted as a juror upon the trial of the action.
It is well to determine here, just what weight is to be given to the word impression, used by these persons, in describing their state of mind. They seek to distinguish it from an opinion. But one of them says that it was such an impression as would lead him to a belief or opinion of the guilt of the prisoner, and of that strength that it would take evidence to remove it, and that he made a slight distinction between an impression and an opinion. The other said that he styled his mental state more an impression than an opinion, but that, he had an impression as to his guilt, and did not directly answer the question whether it would take testimony to remove it, saying that he would answer that if he accepted the obligation of a juror. Now it has been held that only an impression of guilt, but nothing which deserves to be called an absolute opinion, will not sustain a challenge for principal cause, where the juror sometimes had doubts as to guilt, and as far as any opinion had been formed, it was contingent and hypothetical (Freeman v. People, 4 Denio, 9). But it is clear that the jurors in this case had more than a doubt. There had been an effect produced upon their minds, which remained, and which was so firmly lodged there, that it needed a new-coming force to dislodge it. They had received it into their minds as true that the prisoner was guilty, without certain' knowledge of it, but upon proofs which they held satisfactory. And it matters not what the state of mind thus produced is christened—whether an opinion or an impression. There was existing such a decision of mind as to his guilt, as that further proofs must be produced before that decision would be changed. So that we are justified in treating the conclusions of these jurors, as to the guilt of the plaintiff in error *8 as equivalent to what the books call an opinion, when treating of this, subject. The late supreme court did, indeed, hold, that on the trial of a challenge for prin•cipal cause, counsel could not put the question whether the proposed juror had an impression as to the guilt or innocence of the prisoner; but it was upon the .ground that the word abstractly generally means something which does not amount to a fixed or settled opinion (People v. Honeyman, 3 Denio, 121). But here it is the proposed juror who uses the word, but uses it not in accord with that case, and when he gives a statement of the condition of mind which he calls an impression, it appears that it is a fixed and settled state of it, which will need force of proof to remove. There is the same distinction between this case, and that of People v. Thompson, 41 N. Y. 1, and that of O’Brien v. People, 36 Id. 276.
It thus appears that the plaintiff in error was tried and found guilty of murder in the first degree, by a jury, two of whom had formed, and one of whom had expressed such an impression that he was guilty, which impression each of the two still had, when he went into the jury-box; an impression so strong, as that in the case of one of them, it would need testimony to remove it, and in the case of the other, it did not affirmatively appear, that it would not, and it was clearly to be inferred that it would.
On the other hand, the jurors who were challenged, each professed a purpose to render a fair and impartial verdict upon the evidence, and each stated his belief to be that he could and- would do so.
The fact that each of these two jurors started upon the trial of the plaintiff with an impression against him •is sure. It is a matter of that kind, which though resting on unseen mental operations, is still capable of positive ascertainment. Impression or no impression, is a matter which can be determined as positively as *9 any other of mental cognizance. When these persons stated that they had an impression that the plaintiff was guilty of the crime with which he was charged, they spoke of a matter which existed to their consciousness as plainly as any other operation of the mind of which they took note. But when they stated that they would hear the evidence impartially, and would render a verdict without being affected by that impression, it is clear that they were not speaking of an ascertained fact, but only of a purpose of mind, the carrying out of which depended very much upon the strength of will and general mental capacity of each of them. It was a matter entirely uncertain and problematical, which might or might not be attained. And it is said in People v. Mather, supra, that too much stress is not to be laid on such a declaration of a juror, inasmuch as the disqualifying bias which the law regards is one which operates unconsciously on the juror, and leads him to indulge his own feelings when he thinks that he is influenced entirely by the weight of evidence, and that if he is sincerely determined to discard his prejudices he is not to be received, because the law does not hold him capable of doing so (S. P., Freeman v. People, 4 Denio, 9). This, however, seems somewhat conflicted with by the ruling in Lohman v. People, 1 N. Y. 379, where it was held a proper question to put to a juror: if he were sworn upon the jury would be disregard what he had heard and read out of court, arid render his verdict upon the evidence ? The opinion of the juror was held relevant, competent and primary evidence, entitled to consideration, though by no means conclusive. But this again is affected by the decision in Cancemi v. People, 16 N. Y. 501, where a juror was challenged for principal cause, and said that he had formed and expressed an opinion, that he had no fixed opinion, none which could not be removed by the evidence. It was held *10 there, that the statement of the juror was to be taken as equivalent to saying that he had formed and expressed no opinion so fixed that it might not be controlled by the evidence, but it was also held that he was clearly disqualified, because his mind was preoccupied with an opinion which it would require .evidence to remove.
It is clear that had the law, as it is to be deduced from these adjudications, remained unchanged, the judgment brought up by the writ of error must have been reversed.
But the legislature has interposed by statute. It has enacted (Laws of 1872, p. 1133, c. 475), that the previous formation or expression and the present holding of an opinion or impression, in reference to the guilt or innocence of a prisoner, shall not be sufficient ground of challenge for principal cause, if the challenged person, declares on oath that he verily believes that he can render an impartial verdict according to the evidence, and that such previously formed or expressed opinion or impression will not bias or influence his verdict; and if the court is satisfied that such person does not have such a present opinion as will influence his verdict. This act has been judicially declared constitutional (Stokes v. People, 53 N. Y. 164).
The two jurors did declare, on oath, that which the act calls for, and the trial court was satisfied that the opinion then held by them would not influence their verdict.
It may be that this would be final and conclusive upon the plaintiff in error, but for a later statute (Laws of 1873, p. 681, c. 427), that all challenges of jurors shall be tried and determined by the court only; and that either party may except to the determination, and upon writ of error or certiorari the court may review it the same as other questions arising upon the trial.
*11 Formerly a finding of triers upon a challenge for favor was final, and not the subject of review (Sanchez v. People, 22 N. Y. 147); arid this was so when the court was substituted for other triers by consent of parties (Ib.). But now an appellate court has the power to pass upon the question involved in a challenge so as to decide whether the trial court, acting as triers, committed error in its determination thereon (67 N. Y. 218, infra), and the appellate court can review that determination both on questions of law and questions of fact.
There does not appear to be any question of law involved in the present inquiry. There was no exception pressed upon us which was taken to the admission or rejection of evidence. The effect of the statute of 1872 in such a state of facts as this case shows, is that the fact of forming or expressing an opinion or impression, or of having either at the time of the challenge, is not, as matter of law, conclusive proof of bias and unindifference. So that there is here only the question of fact, whether the two persons proposed, or either of them, had such a bias against the prisoner as not to stand indifferent.
It is supposed that the judgment in the case of Thomas v. People (67 N. Y. supra), is conclusive upon us upon that question. But there are important differences between that case and this ; and we are not disposed to go further than we did there. There the opinion. of the juror was hypothetical and contingent. It was dependent upon the truth of statements, upon the basis of which it had been formed. Those statements, too, were not statements made under oath and spread before him in the shape of testimony from the witness-box; they were the unverified and unsolemnized talk of people. The impressions in the case before us are not hypothetical or contingent. Whether slight or deep, they were fixed and absolute. They were based, too, *12 upon testimony actually given under oath, and with the care and attention produced by the solemnity and importance of a trial for murder. The testimony in that case (67 N. Y. supra), which fixed the homicidal act upon the accused person, was direct. Here it is circumstantial, and the same facts which the mind of the proposed juror had once received as so weighty as to produce an impression of guilt, were to be again presented to it as the proof that the plaintiff in error was the killer. And we cannot exclude the idea that on a former trial of the plaintiff in error on this indictment the jury had failed to agree on a verdict of guilty. It is, therefore, a case calling for great care that there be an absolutely indifferent jury to pass upon the circumstantial evidence that the prisoner was the slayer.
It is true, that in each case (this and that in 67 N. Y. supra), the challenged person declares that it will need testimony to remove the opinion or impression. But in the one case, it is not certain that the talk of people will be reproduced in the evidence, and if it is not, the fact that it is not, is, in effect, the testimony which will be calculated to remove the impression. There is then a failure of testimony, which the juror must and will perceive, and which will affect his mind. In the other case, it is more than highly probable, it is as certain as any such human event not yet transpired, that the same testimony will be produced again. It has already been considered by the juror, and has satisfied his reason, and produced belief, and can scarcely fail of doing so again. Each of the jurors, in the case before us, formed his impression from reading a report of the testimony given for the People. Entering the jury-box with that impression upon his mind, and having the same testimony again produced to him, before any in opposition is presented, that impression is too certainly to be deepened and fixed to be removed without difficulty. We are of the mind, that one who *13 has formed an opinion or impression from the reading or report, partial or complete, of the criminatory testimony against a prisoner, on a former trial, however strong his belief and purpose that he will decide the case on the evidence to be adduced before him as a juror, and will give an impartial verdict thereon, unbiased and uninfluenced by that impression, cannot be readily received as a juror indifferent towards the prisoner, and wholly uncommitted. We have already given the views of judges upon this matter. How can it be determined or assumed, that the mind which has already yielded to the force of facts presented to it, through the medium of sworn witnesses, and has formed an opinion thereon, will, on a second hearing of the same facts through a like medium, come to a different conclusion, or even so far command itself as to calmly and judicially weigh them again in the balance of a fresh and unbiased judgment? Can that mind be unbiased in the second pondering of testimony which has already caused it to preponderate and settle to or towards a conclusion ? We think not. Therefore, we are of the opinion that the challenge to the favor should have been sustained. [Some remarks as to the rejection and admission of questions to witnesses, not material to the decision, are here omitted.]
It is sufficient that we see such error in the impanneling of the jury as calls for our interposition and for a new trial.
The judgment must be reversed, and a new trial ordered.
Church, Ch. J., Forger, Raparlo and Andrews, JJ., concurred.
Miller and Earl, JJ., absent.
Note on the Proper Practice in Impanneling a Jury.
[Host of the authorities referred to here turn on the common law rules;, which, however, have been modified in some of the States by *14 statutory regulations such as are indicated in the statement of some of the cases : such statutes should be consulted in connection with the common law wherever they exist.]
I. Nature of challenges. .
Challenges to the array should be made before challenges to the poll.
Much of the language in the books indicates that a challenge to the poll was formerly regarded as an allegation against the juror which must be made with specifications, and must be demurred to or traversed, and if traversed must be supported by proof.
But in modern usage the challenge and examination thereupon is a mode of inquiring whether the jurors are indifferent between the parties. It is the wise course to challenge with courtesy, and let a peremptory challenge be interposed by an associate.
To avoid the necessity of challenging every juror, the court may be asked to propose uniform questions to every juror, and after their answers either party may challenge at his option.
“It is a frequent thing for the court to prescribe certain questions to be put to every juror, which he is to answer, and no specific cause of challenge is stated until these answers are given.” This usage has been adopted on some occasions in the United States courts, and probably prevails throughout the State, Per Mitchell, J., in Carnal v. People, 1 Park. Cr. 272, 282.
Interrogating as to qualifications preliminary to formal challenge is discretionary with the court. State v. Lautenschlager, 22 Minn. 514.
IT. General rules.
1. It is immaterial in civil cases which party challenges first. Cow-en’s Note, 1 Oow. 439. He also says that the one who first begins must finish all his challenges before the other begins, otherwise he is precluded from making any further challenges. But this is not according to the present practice. Each party may interpose his challenges for cause to each juror as he is called, and the challenges will be disposed of before the juror takes his seat.
Where the challenges are not likely to be numerous or important, and the jury are already in the box, the court may call on either side first to challenge all he wishes to, and in such case it is proper to begin with the one holding the affirmative of the issue.
In Sellers v. State (52 Ala. 368), the prisoner was indicted for an offense not capital (burglary). When the case was called at the trial both parties answered ready, and the court directed the defendant to go to trial before one of the regular juries which had been regularly examined, found qualified, and duly sworn, for the week. The de *15 fendant’s counsel challenged two of the jurymen, and announced his satisfaction with the rest. The defendant was then directed by the presiding judge to pass upon the remaining jurors, but objected, “claiming the right to have the jury impanneled as in capital cases, by an examination of and passing upon each one separately.” The judge “refused to exclude the jury from the box,” but informed defendant that he might examine each juror separately as to his qualification or any cause of challenge. “ The defendant refused to do so,” saying that, “without waiving any right which he had, he was content with the jurors. Two other jurors were called and accepted after examination.” Held, that the defendant could not complain on appeal that his request was denied. 1875, Sellers v. State, 52 Ala. 368 [Judge, J.].
In criminal cases the prisoner has the first right of challenge. Rex v. Brandreth, 32 How. St. Tr. 774; Macfarland’s Trial, 8 Abb. Pr. N. S. 57, 58. Contra, Cooley v. State, 38 Tex. 636.
The government cannot exercise a preference in the order of jurors by asking one called to stand aside till the panel is exhausted, but must challenge in order to turn aside a juror. United States v. Butler, 1 Hugh, 457.
2. Where strict practice is pursued, a challenge, to be in proper form, should specify whether it is for principal cause or to the favor. Freeman v. People, 4 Den. 9.
But to omit the statement or to err in it, is not necessarily fatal, unless the objection is taken at the time. People v. Mallon, 3 Lans. 224; People v. Christie, 2 Park. Cr. 579. Compare, however, People v. Cotta, 49 Cal. 467.
An objection to a juror, if intended and understood as a challenge, may be treated as such by the appellate court, although not even expressed to be. a challenge at the trial. Diveny v. City of Elmira, 51 N. Y. 506, 509.
The New York statute of 1873 (stated on p. 1),—by which all challenges of jurors, both in civil and criminal cases, are to be tried and determined by the court only, has not dispensed with the distinction, in substance and in form, between the two classes of challenges. Tweed’s Trial, Davis, J. See also p. 4, above.
A part of the act of 1873 above stated, has been embodied in the Code of Civil Procedure, with additions, as follows: § 1180. [am’d 1877.] “An objection to the qualifications of a juror is available only upon a challenge. A challenge of a' juror, or a challenge to the panel or array of jurors, must be tried and determined by the court only. Either party may except to the determination,, and it may be reviewed, upon a question of fact, or a question of law, or both, aa *16 where an issue of fact presented by the pleadings is tried by the court; except that where one or more exceptions are taken, to the rulings of the court, made after the jury is impanneled, an exception to the determination of a challenge must be heard at the same time; and the case must contain the matters necessary to present it, upon the facts, or the law, or both.”
3. All causes for principal challenge of a juror, relied on by one party, must be taken together, and tried at one time; and all causes for challenge to the favor, relied on by one party, must be taken together and tried at one time; excepting fresh causes arising after trial of those first assigned. Carnal v. People, 1 Park. Cr. 272.
Questions may be proper to enable the defendant to elect as to his right of peremptory challenge, the answer to which might not sustain a challenge for cause. Lavin v. People, 69 Ill. 303; Chicago, &c. R. R. Co. v. Buttolf, 66 Id. 347.
After a challenge for principal cause, on a ground involving alleged bias, has been overruled, the same party may challenge the same juror to the favor, and examine him as to the same matter. Carnal v. People, 1 Park. Cr. 272. Compare the case in the text, at p. 5.
The rule stated in some of the cases (Freeman v. People, 4 Den. 9), and amplified in Wait’s Practice (vol. 3, p. 107), that whichever class the challenge belongs to, the ground of it must be distinctly assigned in interposing the challenge, is not usually enforced in practice. The court may require it; but it is not usually required; and if not required, the challenge is good without assigning a ground. Carnal v. People, 1 Park. Cr. 272, and authorities there collected. To the contrary under the California Code : People v. Cotta, 49 Cal. 167; People v. Buckley, 4 Id. 241.
And assigning one ground of bias does not preclude the challenging party from proving another. Thorn’s Case, 4 City H. Rec. 81.
4. If strict regularity is enforced the challenging party will state the cause of challenge, so that when it goes upon the record, the other party may demur or traverse. If without formal plea or demurrer he adduces evidence tending to disprove the challenge he is treated as having joined issue on it. People v. Mather, 4 Wend. 229, 240.
5. On a challenge to the favor, the triers should be sworn to find whether the juror is indifferent between the parties (in a criminal case between the People and the prisoner) generally. If the oath administered limits them to the question of his indifference ‘ ‘ upon the' issue joined,” it is error. Freeman v. People, 4 Den. 9.
*17 The judge substituted for the triers is not to be sworn (Tweed's case), but should decide upon the same principle.
6. When a juror has been challenged, a witness may be called to prove the ground of challenge. Pringle v. Hulse, 1 Cow. 432; People v. Fuller, 2 Park. Cr. 16.
7. The juror himself may be sworn on the voir dire, and asked such questions as do not tend to his disgrace. Mechanics’ and Farmers’ Bank v. Smith, 19 Johns. 115.
Or, as Blackstone says, “ with regard to such causes of challenge as are not to his dishonor or discredit ... to his disgrace or disadvantage.” 3 Blackst. Com. 363.
Or, as expressed in People v. Fuller (above), such questions as do not “impeach his character or motives.” •
8. Very slight grounds are held sufficient- to sustain triers in the rejection of a juror on a challenge to the favor. Thus, in an action by a bank, the triers found, that a juror who was an indorser of a note held by the bank, was disqualified. The court said that this circumstance might, in connection with others, have been the ground of bias. Mechanics’ and Farmers’ Bank v. Smith, 19 Johns. 121.
9. On a challenge to the favor, competent evidence having been given, the triers (or the court acting in place of triers) must find that the juror is impartial, or must reject him. Freeman v. People, 4 Den. 9; Smith v. Floyd, 18 Barb. 522.
If a doubt is entertained, he should be rejected. The challenger is not bound to make out an affirmative case, as in the case of a charge of guilt. Thorn’s case, 4 City H. Rec. 81.
To same effect on a challenge for cause: Missouri, &c. R. R. Co. v. Munker, 11 Kans. 223.
Otherwise in the case of a challenge solely for cause on technical statutory grounds. Missouri, &c. R. R. Co. v. Munker (above).
A party cannot sustain a challenge to the favor by proof of a bias in his own favor. People v. Mather, 4 Wend. 229, 246.
HI. Usual grounds of challenge for principal cause.
1. That the juror has formed and expressed, or formed or expressed an opinion as to the guilt or innocence of the defendant. Pringle v. Huse, 1 Cow. 432 ; People v. Allen, 43 N. Y. 28 ; rev’g 57 Barb. 338.
2. That the juror is a relative by blood or marriage to either party within the ninth degree. 3 Blackst. Com. 363 ; People v. Thompson, 41 N. Y. 1. Or, as Coke, and Edwards' Juryman's Guide say, within any degree; but this is impracticable. '
3. That he has not the requisite property qualification. Kelly v. *18 People, 55 N. Y. 565, holds that (under the Revised Statutes) as to the personalty, the ownership of the requisite sum must appear by actual assessment. To the same effect was Valton v. National Loan Fund Life Ass. Soc., 17 Abb. Pr. 268. But the former Kings county act dispensed with the necessity of assessment, so far as concerns petit jurors. L. 1858, p. 519, c. 322, § 7, end of 1st paragraph, § 10, subd. 1; though not in respect to grand jurors.
Kelley v. People also holds that the qualification as to property must exist at the time of challenge. The Kings county act did not modify this rule.
For other qualifications,—such as age, capacity, English speaking, &c., and for statutory provisions more recent than those above construed,—see 1 Cow. 438, note, and Code of Civ. Pro. §§ 1027, 1175.
IV. Usual grounds of challenge to the farm'.
1. That the- juror has formed an opinion on the case. This ground may be assigned, although a challenge for principal cause upon the same ground has been heard and overruled. Carnal v. People, 1 Park. Cr. 272. But if sustained by proof, on challenge to the favor, the exclusion of the juror is not matter of right, it rests in the, judgment of the court or triers.
Belief in the truth of an hypothesis, material to the case, or an opinion on a part of the, facts on which the verdict depends, may disqualify.
Thus, in an action to recover damages, incurred by reason of disease alleged to have been communicated to plaintiff’s cattle from cattle brought by the defendant into Illinois from Texas, in contravention of the Illinois statute of 1867, one of the jurors, questioned as to his competency, testified that, in his opinion, Texas cattle would communicate disease, whether themselves diseased or not, but the objection to his serving as a juror was overruled. .Held error, since it appeared that the Texas cattle had passed along the road by the place in which plaintiff’s cattle were. Lawrence, Ch. J., 1871, Davis v. Walker, 60 Ill. 453.
Opinion on “ some of the transactions in the case,” from what he had heard and read of the case, which would require some proof to remove, though with no opinion as to the guilt or innocence of the prisoner, and with a declaration by the juror that he had no bias'or prejudice for or against the defendant, and could render an impartial verdict on the evidence—Held, to show competency. Cole, J., 1875, State v. Bryan, 40 Iowa, 379.
The defendant, an insurance company, was permitted to ask a juror whether suicide is conclusive evidence of insanity, and, upon an affirmative answer, the juror was challenged for cause, which *19 challenge was sustained. 1874, Boileau v. Life Ins. Co., 9 Phil. 218.
2. That he entertains a personal bias against the party challenging. People v. Allen, 43 N. Y. 28; rev’g 57 Barb. 338.
A juror, on hi's examination, stated that he had a prejudice against insurance companies, generally, founded on the fact that he could not comprehend their proceedings, but, that the prejudice would not affect his verdict. Held, that a challenge for cause, in an action against an insurance company, should not have been overruled. Thornton, J., 1871, Winnesheik Ins. Co. v. Schueller, 60 Ill. 465.
3. That he entertains a personal bias in favor of the other party.
Intimate acquaintance with a party to an action, and frequent meeting, does not necessarily disqualify a juror. 1872, Moore v. Cass, 10 Kans. 288.
Intimate acquaintance may be a disqualification. Thorn’s case, 4 City H. Rec. 81. Friendship or clientage is not, as matter of law, necessarily a disqualification. Reg. v. Geach, 9 Car. & P. 499.
4. That he sympathises with considerations which enter into the prosecution [or defense] of this action.
In an action for forcible entry and detainer, brought by trustees of one religious denomination against those of another,—Held, that membership in one disqualified a juror, not on account of his relig» ious opinions, but on the ground of interest. 1871, Cleage v. Hyden, 6 Heisk. (Tenn.) 73.
In an action by a woman against a brewer for selling lager bier to her husband, it appeared that the brewer had no license to sell in small quantities, and one of the jurors testified on the voir dire, that he thought the business of selling and manufacturing lager bier was a “perfect nuisance,” a low business ; no man should be allowed to make or sell it ; had no sympathy for a man that would ; it was a curse to the community ; would do all he could except raise a mob to break down places established for the purpose ; and upon being asked by the court if he felt a leaning in favor of one party or the other, on a question of this kind, to start with, replied, “ Well, my feeling on that is, to have the thing stopped—that is what I feel.” Held, that he was disqualified. Breese, J., 1874, Albrecht v. Walker, 73 Ill. 69.
On the trial of one indicted for keeping open a tippling house on Sunday, a juror testified on direct that he had a prejudice against persons engaged in the business of saloon-keeping, and against liquor-selling, which however would not influence his judgment,; *20 and on cross-examination by the prosecution, said that it was the traffic, and not the persons who engaged in it, that he had a feeling, against. Held, that he was competent. Sheldon, J., 1875, Kroer v. People, 78 Ill. 294.
In an action against a stockholder, brought by a gravel road company, for his subscription, a juror testified that he was a stockholder in another gravel road company in the same county. Held, that this fact did not constitute a disqualification. Worden, J., 1875, Miller v. Wild Cat, &c. Co., 52 Ind. 51.
He also testified that his father resided near the plaintiff’s road and had, he supposed, been assessed in its favor, and, tie presumed, had paid his assessment, whereupon the defendant objected to his competency. Held (without deciding whether, if the father had actually paid the assessment, and become a stockholder in plaintiff’s company, the juror would have been competent), that this evidence did not disqualify him. Ib.
5. That he has a bias in favor of persons on the side of the prose-, cution [or defense] of the action.
The last two grounds were assigned for challenges to the favor, in the Macfarland case, and jurors were examined thereupon as to their acquaintance, &c., with Mr. Frothingham, &c.
Upon impanneling the jury in a civil cause, a juror was asked by the counsel for the defendant [semble, a corporation] if upon hearing the testimony, you should find it evenly balanced, which way would you be inclined to decide the case ? Held, that the question should have been allowed as determining the exercise of peremptory challenge, if for no other reason. Breese, J., 1872, Chicago & Alton R. R. Co. v. Buttolf, 66 Ill. 347. S. P., Lavin v. People, 69 Id. 303. On the contrary, in a suit by a woman, for damages, for the death of her husband, alleged to have happened by the negligence of the defendant, his employer, several jurors were asked, if, in the event the testimony was evenly balanced, they would not incline to the side of the plaintiff, and replied that they would. They were accepted, and verdict was given for the plaintiff. Held, that such questions were improper, and judgment affirmed. Napton, J., 1876, Keegnan v. Kavanagh, 62 Mo. 230.
For other illustrations of these principles see the following cases : People v. Christie, 2 Park. Cr. 579 ; S. C., 2 Abb. Pr. 526 (Supreme Ct. G. T. 1855, Clerks, Morris and Mitchell, JJ., opinion by Morris, J.). Indictment for riot arising out of prejudices between Roman Catholics and others. Defendants were members of a society of Hibernians and Catholics. Held, competent to ask a juror : *21 “ Have you any bias or prejudice against Roman Catholics ?” and that it was error to allow him to refuse to answer, upon the ground that his answer would tend to disgrace him. The court say: “ The right to an impartial jury is not to be sacrificed to the fear or apprehension of wounding the feelings of others. . . There is neither dishonor nor disgrace attached to the fact that a man had formed an opinion upon any subject which agitated public consideration.”
People v. Jones, 1 Edm. Sel. Cas. (At Circuit, 1845, Edmonds, J.). The object is to have an unbiased tribunal;'not necessarily one entirely ignorant of the matter in hand, but one whose mind is so unbiased, so free from any preconceived opinion calculated to warp its judgment, as to enable it to be entirely impartial, and perform its whole duty by rendering a verdict, not according to those preconceived opinions, but according to the evidence.
It is the duty of courts to see to it that both litigant parties, be they public bodies or private individuals,—have such a jury. Would it be a discreet performance of that duty to have a Mormon, with his belief in many wives, serve as a juror on a trial for bigamy ? To have one who believes in taking life for only a verbal insult sit as a juror in the case of a homicide growing out of offensive language ? Such a line of action would be a mockery of justice.
United States v. Reynolds, 1 Utah T. 226 (Brennan, J., 1875). A juror who has conscientious scruples against indicting a person for polygamy is disqualified from serving as a juror to try an indictment for such offense.
United States v. Reynolds, 1 Utah T. 319 (Boreman, J., 1876). On an indictment for polygamy, the juror’s declining to answer whether he was living in polygamy, on the ground that it would tend to criminate him, is a sufficient admission to exclude him.
Maretzek v. Cauldwell, 5 Robt. 660; S. C., 2 Abb. Pr. N. S. 407 (N. Y. Superior Ct. Sp. T. 1867). In an action for libel, respecting plaintiff's conduct in managing theatricals, the fact that a juror declares himself opposed to theatrical representations, is not a ground of challenge for principal cause. It does not constitute incompet.ency, and is only ground of challenge to the favor.
Dorr’s Trial (Supreme Ct. of R. I. 1844). Trial for treason against the State. The court refused to allow jurors to be asked if they voted for Dorr, and if they believed he was governor at the time in question.
Smith v. Hoyd, 18 Barb. 522 (Supreme Ct. Gen, T. 1854). Held, the fact that the proposed juror had formed an opinion against the “ custom ’’ set up in the answer, is proper to go to the triers on a *22 challenge for favor ; though it does not entitle the challenging party to an instruction that he is not indifferent.
McNall v. McClure, 1 Lans. 32, 35 (Supreme Ct. 1869). Held, that the fact that all the jurors expressed an opinion that the statute on which the proceeding was had was a good law, did not as matter of law disqualify, nor was it evidence to go to the triers.
Purple v. Horton, 13 Wend. 9 (Supreme Ct. 1834, Opinion by Savage, J.). Action for slander. Held, that a freemason is not disqualified, as matter of principal cause, from sitting as a juror, where another mason is a party, even though they be of the same degree. Black.stone's statement, that being of the same society or corporation, is enough to exclude, is not, as a general rule, sound, in the present state of society. In the same case, a challenge on the same ground was submitted to triers, who heard the oath which is taken by all masons to aid each other, &c., and they held the juror indifferent. HeId, no error.
In the Morgan Trials, on an indictment for conspiracy to kidnap (one of the trials reported as People v. Mather, 4 Wend. 229), a juror was challenged for principal cause on the ground that he was a member of the society of freemasons and of the degree of Royal Arch : and reliance was placed on the rule in Blackstone.The court held that society ” meant such as are recognized by law. Mr. Spencer offered to prove that the society of which the juror and defendant were both members was incorporated. After argument the court overruled the objection ; and, on trial of a challenge to the favor, the obligations of freemasonry having been proved, the triers rejected the juror. Edw. Jurym, G. 95.
Williams v. Smith, 6 Cow. 166. In an action against a turnpike company’s toll-gatherer, if the company would not be liable for the recovery in case it cannot be collected from the defendant, a stockholder of the company is not subject to challenge for principal cause.
Burr's Trial, vol. 1, p. 370. The chief justice said that if á juryman were to declare that the attempt to achieve the dismemberment of the Union (a political society or body politic of which both the jurors and the defendant were inembers, and which was the prosecutor) was treason, it would not be a complete objection or disqualification.
Lewis v. Few, Anth. N. P. 102. In libel, for publishing an address adopted at a political meeting, a person present and acting at such meeting was found incompetent.
Diveny v. City of Elmira, 51 N. Y. 506, Earl, C., 1873. A citizen and taxpayer of a municipality is not competent as a juror in an action against it, except in an action to recover penalty or forfeiture *23 (2 R. S. 557, § 2 ; Code of Civ. Pro. § 1179), unless by its charter such disqualification is removed.
Hearn v. City of Greensburgh, 51 Ind. 119, Biddle, Ch. J., 1875. It is a good cause for challenge of a juror by the plaintiff suing for an injury resulting from a defective condition of a sidewalk alleged to have been improperly constructed, and negligently allowed to be out of repair, that the juror is a citizen and taxpayer of the city sued. S. P., Cramer v. City of Burlington, 42 Iowa, 315.
And the plaintiff, by going to trial after objection and exception, does not waive his objection to the panel. Fulweiler v. City of St. Louis, 61 Mo. 479.
V. Disqualifying opinions.
The case in the text reverses the decision in 13 Hun, 242, and overrules in effect Phelps v. People, 6 Id. 401, 421.
The following reference to the cases will illustrate the recent history of the controversy as to disqualifying opinions.
The juror must “ stand indifferent as he stands unsworn.” Coke Litt. 155, b. That is, he must owe his indifference not to his oath but to his condition of mind before it is taken.
[Cited with apparent approval in Exp. Vermilyea, 6 Cow. 563 (1826).
Declared by Edmonds, J., to be an unintelligible maxim. People v. Hayes, 1 Edm. Sel. Cas. 584 (1848).
Declared to be a cardinal rule of law by Andrews, J. (Ct. of App.). People v. Allen, 43 N. Y. 28, 34.]
The formation and expression of a merely hypothetical opinion,— e. g., “if the reports of the neighbors are correct defendant was wrong, &c.,” does not necessarily disqualify. Durrell v. Mosher, 8 Johns. 445. Compare People v. Murphy, 45 Cal. 137.
But in People v. Mather, 4 Wend. 229, 242, it is said that an opinion formed on rumor is more disqualifying than one formed on knowledge.
On the contrary:
One of the articles of impeachment of Judge Chase, was that he admitted a juror on this principle. People v. Vermilyea, 7 Cow. 108, 123.
The formation and expression, or the foimation or expression of an opinion as to the guilt or innocence of the prisoner, founded on knowledge of the facts, or information derived from those who knew the facts, is a principal cause of challenge. People v. Vermilyea, 7 Cow. 108, 126, 128.
The rule in People v. Vermilyea applies equally to an opinion founded on newspaper reports and rumors, as to one founded on *24 knowledge or evidence of facts. People v. Mather, 4 Wend. 229, 241 (1830).
On trial of a challenge to the favor, it is error to charge the triers, that nothing but a fixed and decided opinion, such as will ’require evidence to remove, is a disqualification. Any and every circumstance, from which bias, partiality, or prejudice may justly be inferred, though very weak in degree, is admissible. People v. Bodine, 1 Den. 308; rev’g 1 Edm. Sel. Cas. 36.
Said by Edmonds, J., in People v. Hayes, 1 Edm. Sel. Cas. 582, to be overruled by People v. Honeyman, 3 Den. 122, so far as that now the judge should instruct the triers not to set aside a juror unless he has such a settled opinion that he cannot disregard what he has read and heard, and render verdict on the evidence alone, and that he is to be trusted when he says he can do so.
Nothing short of a fixed or settled opinion is a sufficient opinion to sustain a challenge for principal cause, although a mere impression may be proved on a challenge to the favor. People v. Honeyman, 3 Den. 121.
It seems, that it is not judicious to set aside a juror on challenge for favor, because of an opinion not so settled that he could not disregard what he had heard out of- court, and render a verdict on the evidence alone. People v. Honeyman (above cited); People v. Hayes (above cited).
An opinion which it would require evidence to remove, is a disqualification as matter of principal cause. Cancemi v. People, 16 N. Y. 501;
[Said not to be controlling authority by Roosevelt, J., in People v. Sanchez, 18 How. Pr. 72. On error in the court of appeals, the only judge who expressed an opinion on the merits of the challenge was Clebke, J., dissenting, who thought it wrongly overruled. Sanchez v. People, 22 N. Y. 147, 155, 161.
Distinguished in People v. Stout, 4 Park. Cr. 71, as not excluding, unless the opinion is absolute and settled.]
A preconceived idea, formed from reading the papers, but without bias either way, and the preconceived idea or impression being one which would not influence the verdict, does not necessarily disqualify on a challenge to the favor. People v. Sanchez, 18 How. Pr. 72, 75.
[Facts as to' the challenge are stated iu 22 N. Y. 150.]
General impressions derived from reading newspapers, and not amounting to an opinion on the prisoner’s guilt or innocence, do not as matter of law disqualify on a challenge to the favor, especially as the decision of the triers is final. O’Brien v. People, 36 N. Y. 276. S. C., 3 Abb. Pr. N. S. 368 ; affi’g 48 Barb. 274).
*25 An indefinite and hypothetical opinion, which is not absolute and settled, does not disqualify as principal cause, but goes only to the favor. People v. Stout, 4 Park. Cr. 71, 109 ; People v. Mallon, 3 Lans. 224.
In Probst’s case (trial for murder of Bearing, Official Report, p.8, Oyer and Terminer, 1866, Allison, P. J., and Pierce, Assoc. J.), the following question was put:
“Notwithstanding the opinion [or, impression] that you have formed, can you enter the jury-box and decide the guilt or innocence of the defendant upon the evidence which may be submitted to you, and upon that alone, uninfluenced by the impression or opinion which you say you have formed of the guilt or innocence of the defendant ?”
The juror had- previously said he had formed an opinion, and counsel insisted that he was incompetent. Allison, P. J., put the above question, and, the juror answering in the affirmative, the challenge was withdrawn and the juror accepted.
A juror, examined on behalf of the defendant, said: “I heard of the matter'last spring. What I heard did not make any impression on my mind. Have formed and expressed no opinion. What I heard was hearsay; have never read any newspaper account, and the person who told me evinced no feeling. I could go into the trial without prejudice either way. Prom what I heard I suppose the defendant to be the man who killed (the victim). It would take evidence to remove from my mind the impression that he killed the victim.” A challenge for cause having been overruled,—Held, that the ruling was correct. 1873, State v. Crawford, 11 Kans. 32.
A juror, challenged by the defense, testified that he had formed an opinion, in part taken from the newspapers, and part from oral rumor, but that his opinion was so unfixed that he could hear and determine the case upon the evidence adduced at the trial, uninfluenced by previous impressions, though they were derived in part from reading the newspaper account of the evidence before the coroner. Held, that he was not incompetent. 1874, Artwein v. Commonwealth, 76 Pa. St. 414.
A juror stated he had formed an impression based on newspaper statements, and that it would require evidence to change it. On cross examination, it would require some evidence—he could not draw such a distinction as to requiring “ considerable evidence;” to him all evidence was evidence. To the court: his impression was not an opinion, and that his opinion would give way to evidence. Held, that the court did not err in refusing challenge for cause. State v. Coleman, 27 La. 691.
An opinion expressed hypothetically, and not with regard to all *26 the facts,—Held, no evidence of a fixed and definite opinion. Curry v. State, 5 Neb. 412.
One who had formed and expressed an opinion, said, “I talked pretty loud, my opinion is based upon general rumor and newspaper reports ; I think I could return a fair and impartial verdict, but might possibly lean a little the other way—Held, incompetent. 1876, Curry v. State, 4 Neb. 545.
The defendant, indicted for murder, challenged a juror for implied bias. On his examination in chief, the juror stated that when the homicide was committed he was a telegraph operator, near the place where the homicide occurred, and learned some of the facts from dispatches sent through the office, and also heard some of the particulars through a witness for the prosecution ; that from these facts, and particularly from the dispatches, he had formed an opinion as to the guilt or innocence of the accused ; that it was a “fixed opinion,” and would require evidence to remove it; 'that he still retained that opinion after having heard what purported to be the facts of the case, and it would require evidence to change it. On cross-examination, he said that the opinion he had formed depended on the truth or falsity of what he had heard ; that “if it turns out that what I have heard is not true, then I will have no opinion in the matter.” Held, that he, having a “fixed opinion,” and not a mere “hypothetical opinion,” or a “mere impression,” should have been excluded from the jury-box. Judgment reversed. 1873, People v. Johnston, 46 Cal. 78.
A juror said, “I read accounts of this matter in the newspapers, heard it talked about; have formed an opinion, I think, from what I have read; the opinion would follow me, if I had no evidence against it, into the jury-box ; if there was nothing to contradict these reports, I should be of the same opinion; unless the evidence satisfied, me that I was wrong I should hold to that opinion; I have not formed an opinion which could influence me, unless the evidence sustained it.” He further testified that, notwithstanding his opinion, he could decide upon the evidence, and upon that alone. Held, that he was competent. 1874, O’Mara v. Commonwealth, 75 Pa. St. 424.
The juror challenged by the defendant had formed and expressed an opinion as to the guilt or innocence of the accused, derived from oral rumor. Held, that though the juror said it was a decided opinion, the presumption (after conviction) was that such opinion was merely hypothetical, as he said that he had no prejudice and could give the accused an impartial trial. 1873, Jackson v. Commonwealth, 23 Gratt. 919.
A juror stated that from what he had read in the papers he had *27 formed an opinion; and in reply to questions of judge said, “The opinion referred to was not an opinion, but an impression, which impression would readily yield to evidence (strong evidence, mind) and that he could go into the jury-box, and render a verdict according to the evidence in the case, regardless of the impression referred to by him. ” Held, that he was not disqualified. State v. Hugel, 27 La. Ann. 375. See also Hall v. State, 51 Ala. 9.
The examination of the jurors disclosed the fact that they had read in newspapers some account of the alleged robbery, and that some of them had heard reports of the matter from witnesses and others. One of them (said in the opinion to have formed a more decided opinion than the others) swore, in answer to the question whether he had any prejudice for or against the accused, that he had, and that he did not think he could give him an impartial trial. On further examination he testified that he did not know the accused, had no friendliness or animosity to him, did not remember whether he had conversed with any one who knew the facts, did not think he had, and that his knowledge was derived principally from newspapers. Held, that he was a competent juror under the act of 1872 (9 Sess. 94), which provides that a pre-existing opinion shall not disqualify a juror, if the court shall be satisfied from his examination, or from other evidence, that he will render an impartial verdict. Hallett, C. J., 1873, Jones v. People, 2 Col. T. 351.
Held, also, that that act was not in conflict with article 6 of U. S. Constitution, which secures to all persons charged with crime the right to be tried by an impartial jury. Ib.
An opinion that the deceased was killed, and that the prisoner killed him, with nothing more to explain it, disqualifies upon a challenge for cause, by the prisoner. Valentine, J., 1875, State of Kansas v. Brown, 15 Kans. 400.
In an action for the possession of real property, one of the jurors, examined by the plaintiff, said that he had asked one of the defendants if he had such a case in court, and the defendant said he had, but did not talk much about it, but that the juror had formed and expressed an opinion concerning the merits of the case ; that he believed the opinion formed by him would readily yield to the evidence presented ; and that he could hear it and decide as impartially as if he had not previously formed and expressed an opinion. Held, that he was competent. Buskirk, C. J., 1875, Scranton v. Stewart, 52 Ind. 68.
Held, also, that two jurors who swore that they had heard the case talked about by various persons ; that upon what they heard they had formed and expressed opinions upon the merits of the case, and the *28 rights of the parties ; and that they believed their opinions were of such a character that they would readily yield to the testimony. Ib.
A juror, questioned by the defendant, said that he had read the report of the evidence (in the case of one jointly indicted with the defendant) ; that he had formed an opinion thereon as to the guilt or innocence of the accused; that it would require other and different evidence to change that opinion; that the opinion so formed would not influence his verdict in the slightest degree; and that he would give the accused a fair and impartial trial according to law and the evidence. Held, that the juror should have been rejected. 1875, Black v. State, 42 Tex. 377.
A struck jury was called, and the accused, after her peremptory challenges were exhausted, challenged three jurors for cause. Each swore that he had “formed or expressed an opinion as to the guilt or innocence of the accused;” but they stated that, nevertheless, they could render an impartial verdict upon the law and the evidence. One said his opinion was formed from what he had read in the newspapers; another that his opinion was founded upon the same, including what he had read in papers of the testimony published therein, of the testimony taken before the coroner's jury; and the third, that his opinion was formed entirely from reading what purported to be a report of such testimony as appeared in the newspapers. Held, that while the first-mentioned juror might be, and in the discretion of the court was, competent, that the two last jurors were incompetent. Frazier v. State of Ohio, 23 Ohio St. 551.
Under section 134 of the Ohio code of criminal proceedure (as amended February 10, 1872), an opinion of a juror in a criminal case, formed upon reading the testimony therein as printed in a newspaper, precludes him from serving as a juror in the case. Ib.
Otherwise, if such opinion 1 ‘ shall appear to be founded upon reading newspaper statements,” &c., if the court is satisfied that he is impartial. Ib.
A juror testified to a question put on behalf of the accused, “I have formed and expressed an opinion as to the guilt or innocence of the prisoner ; read the evidence of the former trial ; still entertain that opinion, which it would take some evidence to remove ; this opinion would not bias or influence my judgment, if I were sworn as a- juror ; this opinion was formed from reading the evidence of the former trial.” And upon the accused challenging for cause said, “If sworn as a juror I could and would make up my verdict exclusively upon the evidence given here, unfluenced and unbiased by my present opinion.” Held, that he should have been excluded. Agmew, J., 1873, Staup v. Commonwealth, 74 Pa. St. 458.
*29 ‘ ‘ Whenever, therefore, the opinion of the juror has been formed upon the evidence given in the trial at a former time, or has been so deliberately entertained that it has become a fixed belief of the prisoner’s guilt, it would be wrong to receive him. In such a case the bias must be too strong to be easily shaken off, and the prisoner ought not to be subjected to the chance of conviction which it necessarily begets.” 16.
“ But where the opinions or impressions of the juror are founded on rumor or reports, or even newspaper statements, which the juror feels conscious he can dismiss ; where he has no fixed belief or prejudice, and is able to say he can fairly try the prisoner, on the evidence, freed from the influence of such opinion's or impressions, he ought not to be excluded.” 16.
In Wiggin v. Plumer, 11 Foster (M. H.) 251, it was held that the fact that a juror had repeatedly expressed a decided opinion on the case, before the trial, and did not disclose this when the jurors were . asked as to their indiSerency, is ground for a new trial.
YI. Peremptory challenges.
1. The peremptory challenges should be reserved until a full number of jurors has been obtained, by examination, and interposing and passing on challenges for cause and to the favor.
The court may then properly ask the party having the affirmative of the issue to look upon the jury, and if he choose he may then challenge peremptorily, one at a time. Before a second peremptory challenge is interposed, a juror should be called to fill the place vacated by the first; and on calling him each party may challenge for cause and to the favor. When the number is full again, another peremptory challenge may be interposed.
The object of this method is to avoid the injustice or hardship of requiring the parties to exhaust at once the peremptory challenges on the number otherwise accepted, and then to submit to have all vacancies filled by a body of new jurors, which can only be challenged for principal cause or to the favor.
But the usages of courts differ on this point; and if there be any doubt, leave to reserve the peremptory challenges may be asked.
In Cooley v. State, 38 Tex. 636 (in a well-considered opinion by Walker, J.), it was held error to compel the prisoner to exercise his peremptory challenge before the panel was full; and on this ground the conviction was reversed. To the same effect in civil cases is the ruling in Taylor v. Western Pac. R. R. Co., 45 Cal. 323.
But compare Tatum v. Preston, 53 Miss. 654, 1876, where a full' jury was impanneled, and the defendant peremptorily challenged one of them. Another juror was called in his stead, but neither party *30 objected. Held, that the defendant could not thereupon challenge another of the original panel, because he should, when the full panel was presented to him, have challenged as many as he thought objectionable.
2. The right to peremptory challenges is given, and the number fixed by statute. State v. McClear, 11 Nev. 39.
3. In a civil action in this State “ each party ” is entitled to two. 1 L. 1847, p. 130, c. 134; Code Civ. Pro. § 1176.
4. In criminal cases the right is regulated by the following statutes:
“Every person arraigned and put on his trial for any offense punishable with death, or with imprisonment in a State prison ten years or any longer time, shall be entitled peremptorily to challenge twenty of the persons drawn as jurors for such trial, and no more.” 2 R. S. 734, § 9.
“Every person arraigned and put on trial for any offense not punishable with death or with imprisonment in a State prison ten years, or for a longer time, shall be entitled peremptorily to challenge five of the persons drawn as jurors for such trial and no more; except that iñ cases tried in any court of special sessions, said right of peremptory challenge shall extend to only two of said persons so drawn.” 1 L. 1847, p. 130, c. 134, § 2.
“On trial for any offense punishable by death, or by imprisonment in the State prison for the term of ten years or for a longer time, the people shall be entitled peremptorily to challenge five of the persons drawn as jurors for such trial, and no more; and on the trial of an indictment for any offense punishable by imprisonment for a less term than ten years, the people shall be entitled peremptorily to challenge three of the persons drawn as jurors for such trial, and no more.” L. 1858, p. 557, § 1. Modified as follows:
“ The people and the accused, in all capital cases, shall also [?] be entitled to thirty peremptory challenges.” 1 L. 1872, p. 1133, c. 475, § 2.
“ All existing acts conflicting with the provisions of the foregoing sections are hereby repealed.” Id. § 3.
“ On trial of all felonies and misdemeanors, the prosecution shall be entitled to the same number of peremptory challenges as are or may be by law given to the defense.” L. 1873, p. 681, c. 427, § 2.
4. The right is absolute, and continues till the juror in question is sworn. Lindsley v. People, 6 Park. Cr. 233; Drake v. State, 51 Ala. 30 ; People v. McCarty, 48 Cal. 557 ; Murray v. State, 48 Ala. 675.
So also under the Wisconsin statute. Lamb v. State, 36 Wisc. 424.
*31 Otherwise under local law, in Stewart v. State, 50 Miss. 587 ; Hoobach v. State, 43 Tex. 242.
5. Where two or more prisoners are tried jointly, the peremptory challenges are not divided, but each is entitled to the full number, unless the local statute indicates otherwise.
VII. Waiver of challenges.
A hasty expression of satisfaction with a juror does not necessarily render it error to allow a subsequent challenge. Adams v. Olive, 48 Ala. 551.
Accepting a juror without inquiry waives the technical objections to want of property qualification, &e. Estep v. Waterous, 45 Inch. 140.
If, after the rejection of a juror against objection, twelve others are found with whom both parties declare themselves satisfied, error in the rejection is not available. Grand Rapid, &c. Co. v. Jarvis, 30 Mich. 308. [Doubtful.]
One who knowing of the want of qualification accepts the juror or fails to make inquiry may be held concluded. Lane v. Scoville, 16 Kans. 402 ; Brown v. State, 52 Ala. 345.
According to State v. McQuaig, 5 S. C. 429, error in overruling challenge for cause is waived by failing to exercise a peremptory challenge which would have accomplished the same purpose. But this is not sound as a universal rule, for the use of the peremptory challenge might let in an unacceptable juror. The prisoner has a right to have his challenges for cause correctly passed on before he is put to his peremptory challenge.
Challenging a juror peremptorily has been held to waive error in overruling a previous challenge to the same juror for cause. Conway v. Clinton, 1 Utah T. 215. But compare State of Kansas v. Brown, 15 Kans. 400 (Valentine, J., 1875), where it was held that defendant, having exhausted all his peremptory challenges, the admission of a disqualified juror was error, although he was afterwards discharged on a peremptory challenge.
. After the jury was sworn, a member thereof informed the court that he was not a citizen of the United States, but no objection being made, the trial went on. Held, that though the alienage of a juror was a good ground of objection, if taken at the proper time, the objection not so taken was waived. Hallett, C. J., 1874, Jones v. People, 2 Col. T. 351.
Technical statutory disqualifications are strictly construed, so as not to exclude unless the juror is clearly within their terms. Miss., &c. R. R. Co. v. Munkers, 11 Kans. 223.
A challenge sustained cannot be withdrawn. State v. Lautenschlager, 22 Minn. 514.
*32 VIH. Exceptions.
In connection with the New York statute, cited and construed above, p. 1, and Thomas v. People, 67 N. Y. 218, the following recent cases may be referred to.
An objection that jurors were accepted, whose examination showed were disqualified by reason of opinion, will not be considered on writ of error where no exception was taken at the trial, and the question is first considered on appeal from a conviction. Cooley, J., 1875, Bronson v. People, 32 Mich. 34.
The defendant, indicted for murder, was convicted (of murder in. the second degree), and one ground he relied upon was, that the challenge of the prosecution for implied bias was improperly sustained, and the juror improperly excluded. Held, that under the California penal code, § 1170, subd. 1, this decision was not the subject of an exception. Wallace, C. J., 1875, People v. Colson, 49 Cal. 679 ; citing People v. Murphy, 45 Id. 137.
A juror, who was examined by the defendant concerning his qualifications, was challenged for actual bias, and the challenge was disallowed. No objection was taken to the admission or rejection of evidence [as to bias], nor to any of the proceedings on the hearing of the challenge. Held, that the decision of the question of fact raised by the challenge was final, and was not subject to review on appeal. Rhodes, J., 1875, People v. Vasquez, 49 Cal. 560. The same was held in People v. Cotta (Id. 167), on an indictment for murder (McKinstry, J.).
On appeal great weight is due the opinion of the court before which the venire-men are questioned. Jackson «. Commonwealth, 23 Ci'att. 919.
IX. Challenge to the array. For recent cases, see Carpenter v. People, 64 N. Y. 483 ; Thompson v. People, 6 Hun, 135 ; Foster’s case, 13 Abb. Pr. N. S. 372, n.; Stokes v. People, 53 N. Y. 164 ; Powell v. People, 5 Hun, 169 ; Gaffney v. People, 50 N. Y. 416, afli’g 1 Buffalo Super. Ct. (Sheldon) 304 ; and Code of Civ. Pro. ch. 10, titles 8, 3-5.
X. Talesmen. A talesman is a juror summoned from bystanders, to fill up a panel, for the trial of a particular cause.
Under the N. Y. statutes as amended by L. 1861, p. 528, c. 210, the sheriff can summon talesmen only by consent of parties. Shields v. Niagara Savings Bank, 3 Hun, 477 ; S. C., 5 Sup'm Ct. (T. & C.) 585. But compare Code Civ. Pro. §§ 1171, 1174.
The sheriff cannot summon talesmen for the sole purpose of an action to which he is a party. Howe v. Brundage, 1 Sup'm Ct. (T. & C.) 429.
Talesman for struck jury. People v. Tweed, 11 Hun, 195.